STEVEN R. YOUNG (SBN 96258)
**LAW OFFICES OF STEVEN R. YOUNG**
95 Enterprise Suite 340
Aliso Viejo CA 92656

FRANKLIN D. AZAR (*pro hac vice* forthcoming)
MICHAEL D. MURPHY (*pro hac vice* forthcoming)
TIMOTHY L. FOSTER (*pro hac vice* forthcoming)
BRIAN HANLIN (*pro hac vice* forthcoming)
ALEXANDER F. BEALE (*pro hac vice* forthcoming)
MARGEAUX R. AZAR (*pro hac vice* forthcoming)
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, Colorado 80014
Phone Number: (303) 757-3300
Fax Number: (720) 213-5131

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN HORLIECA AND DARRYL WARNER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs(s), <br><br> vs. <br><br> UNITED SERVICES AUTOMOBILE ASSOCIATION AND USAA CASUALTY INSURANCE COMPANY, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) BREACH OF CONTRACT, INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; <br><br> (2) VIOLATION OF THE BUSINESS AND PROFESSION CODE § 17200; AND <br><br> (3) DECLARATORY RELIEF <br><br> **JURY DEMAND** |

Plaintiffs John Horlieca and Darryl Warner (collectively, "Plaintiffs"), on behalf of themselves individually and on behalf of all others similarly situated, bring this action against Defendants United Services Automobile Association ("USAA-Association") and USAA Casualty Insurance Company ("USAA-CIC") (these Defendants are collectively referred to herein as "USAA") to recover monetary damages, injunctive relief, declaratory relief, and other remedies for breach of

contract and violations of the California Business Practices Act. The following allegations are based upon Plaintiffs' personal knowledge with respect to their own acts and based upon information and belief as to all other matters.

## I.    INTRODUCTION

1.    This action concerns USAA's improper scheme designed to systematically, wrongfully, and arbitrarily deny its insureds first-party medical payments ("MedPay") insurance benefits owed them under their USAA insurance policies.[1]

2.    USAA's scheme involving the improper processing and adjustment of MedPay claims and the improper reduction or denial of MedPay benefits is multi-faceted. In furtherance of the scheme to deny or reduce the payment of MedPay benefits, USAA-Association contracts with Auto Injury Solutions ("AIS"), a third-party, to reduce or deny reimbursement of MedPay benefits using its Medical Bill Audit ("MBA") process.

3.    The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, and RF codes.

4.    Specifically, in furtherance of its scheme, USAA, through AIS's MBA process, reduces the amounts USAA will pay in connection with its insureds' medical bills using PPO codes which utilize allowable billing rates under agreements between other insurers and preferred provider organizations ("PPO") and preferred provider networks ("PPN"),[2] even though USAA has no direct PPO or PPN agreements with its insureds' healthcare providers.

5.    Also, in furtherance of its scheme, USAA denies reimbursement of PIP and/or MedPay claims based on DOC codes whereby USAA directs AIS to program its computer to deny payment of medical bills covered under PIP and/or MedPay claims if certain documents are not attached to the bills, even though the documentation is not needed to substantiate the necessity of the billed treatments.

---

[1] MedPay is a first-party benefit coverage for which the insured has paid a separate premium.
[2] Unless otherwise specified, PPO and PPN are collectively referred to herein as "PPO."

6.      Additionally, in furtherance of its scheme, USAA denies reimbursement of MedPay claims amounts, using PR codes, on the basis that the medical expenses are not medically reasonable or necessary and/or causally connected to the accident, relying on sham medical review services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical review services are conducted after bogus preset "flags" are triggered pursuant to guidelines programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily set number, *e.g*., the 13th chiropractic visit. In denying payment, USAA relies on a letter written by the AIS engaged physician in connection with the sham medical review. The physician conducts only a cursory, hollow review of the provider notes and related documents contained in the AIS database and does not communicate with either the insured or the insured's provider. USAA does not conduct any independent investigation, but instead relies only on the sham physician review in denying reimbursement of the insured's MedPay claim.

7.      Moreover, in furtherance of its scheme to deny or reduce the payment of MedPay benefits, USAA relies on AIS's automated review process using preset "flags" or "codes" that deny a MedPay claim on the basis that the provider treatment is not causally related to the accident if the provider does not check the box "Auto Accident" on the standard "Health Insurance Claim Form" under the inquiry: "IS PATIENT'S CONDITION RELATED TO:" The USAA adjuster does not conduct any adjustment of the claim and does not investigate whether the treatment was causally related to the accident, but instead denies reimbursement of the MedPay claim based only on the MBA automated process.

8.      Additionally, in furtherance of its scheme to deny or reduce the payment of MedPay benefits, USAA reduces payment for medical provider bills, using RF codes, whenever an automated review process, conducted by AIS pursuant to its contract with USAA, indicates that the charge for a particular procedure exceeds a certain arbitrary threshold established in a database maintained by the actuarial firm Milliman, Inc. (the "Milliman Database"). The Milliman Database is comprised of an outdated 5% nationwide sample of charge data from patients over 65 collected by the U.S. Department of Health and Human Services/Centers for Medicare and Medicaid Services ("Medicare"). This Medicare patient sample has no bearing on the reasonableness of charges for the medical services

provided to USAA's insureds, does not reflect the entire range of fees charged in the geographic area where the medical services are provided, and is comprised of data not organized by a provider's years of experience, background, or qualifications. USAA denies or reduces payment of its insureds' medical bills based only on AIS's automated review process and does not conduct any independent or individualized review to assess whether the charge is a reasonable and necessary medical expense.

9.     This action seeks to remedy USAA's improper and unlawful conduct and enjoin USAA from continuing to perpetrate its scheme against its California insureds through the improper processing, adjustment, and payment of MedPay benefits.

## II.   PARTIES

10.     Plaintiff John Horlieca is a resident of Fontana, California, in San Bernardino County who was injured in an automobile accident on February 10, 2019, in San Bernardino County, California. At the time of this accident, Plaintiff was insured under a USAA-Association policy that included $25,000 in MedPay coverage.

11.     Plaintiff Darryl Warner is a resident of Brentwood, California in Contra Costa County who was injured in an automobile accident on August 20, 2018, in Contra Costa County, California. At the time of this accident, Plaintiff was insured under a USAA-CIC policy that included $25,000 in MedPay coverage.

12.     At all times material hereto, Defendant USAA-Association was, and still is, a reciprocal interinsurance exchange licensed to do business in the State of California. USAA-Association has sold and/or underwritten thousands of automobile insurance policies to California residents that provided MedPay coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. The MedPay policies at issue in this case were issued by USAA-Association to California residents.

13.     At all times material hereto, Defendant USAA-CIC was, and still is, a corporation organized under the laws of Texas with a principal place of business in Texas. USAA-CIC has sold and/or underwritten thousands of automobile insurance policies to California residents that provided MedPay coverage requiring the payment of all reasonable and necessary medical expenses incurred

CLASS ACTION COMPLAINT

1   by a covered person arising from a covered accident. USAA-CIC is a wholly-owned subsidiary of

2   USAA-Association.

3       14.   Defendants hold themselves out and identify themselves in California as USAA.

4   USAA-Association, the parent company, exercises total domination over, and directs and unduly

5   controls, USAA-CIC; and exercises total domination over, and directs and unduly controls, all actions

6   of USAA-CIC, including all actions relating to the improper processing, adjustment, and payment of

7   MedPay benefits.

8       15.   USAA commingle funds, file joint tax returns, share principal office addresses, and

9   share registered agents and officers. [3]

10      16.   USAA-Association negotiated and entered the contract with AIS on behalf of itself, as

11  well as USAA-CIC.[4]

12      17.   USAA-Association has totally dominated and unduly controlled USAA-CIC to such

13  an extent that USAA-CIC's independent existences were in fact non-existent and USAA-Association

14  was in fact the alter ego of USAA-CIC, and USAA-CIC is an instrumentality of USAA-Association.

15      18.   The corporate form of USAA-CIC was used for an improper purpose to allow USAA

16  to engage in an improper scheme designed to systematically, wrongfully, and arbitrarily deny

17  Plaintiffs first-party MedPay insurance benefits owed under their USAA insurance policies. USAA

18  was able to engage in this improper scheme through the contract and unlawful arrangement between

19  USAA-Association and AIS through which USAA improperly denied or reduced MedPay claims.

20      19.   The improper use of the corporate forms of USAA-CIC caused injury to Plaintiffs and

21  all Class Members allowing USAA to systematically, wrongfully, and arbitrarily deny them first-

22  party MedPay insurance benefits owed under their USAA insurance policies.

23  _____

24  [3] *See* USAA-Association and USAA-CIC filings, showing that USAA file joint tax returns and share
    principal office addresses, and showing that USAA-CIC has the same officers and directors or
25  trustees.
    [4] Declaration of Joley Day-Mayfield in Support of Defendants' Opposition to Plaintiff's Motion to
26  Remand, filed in *Peoples v. United States Automobile Association, et al.*, United States District Court
    Western District of Washington, No. 2:18-cv-01173-RSL (ECF 15), pg. 3, ¶ 8 (Joley Day-Mayfield,
27  USAA-Association's Director Claims Policy, states under oath that AIS is USAA-Association's
    "third-party vendor," carefully referring to USAA-Association as the party with vendor relationship
28  with AIS, rather than "Defendants," where "Defendants" is collectively referring to USAA-
    Association and USAA-CIC).

1    **III.    JURISDICTION**

2    20.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.

3    § 1332(d)(2). This is a class action in which there is diversity of citizenship between at least one

4    plaintiff class member and one defendant; the proposed Classes each exceed one hundred members;

5    and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

6    21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants regularly

7    conduct business in this District and a substantial part of the events giving rise to the claims asserted

8    herein occurred in this District.

9    **IV.    FACTUAL ALLEGATIONS**

10
11   **A.    USAA's Provision of MedPay Services, and the Contractual and Regulatory Provisions Pertaining to the Provision of Such Services.**

12   22.    USAA specifically targets and markets to military service members and their families

13   for the purpose of selling insurance products. USAA represents that it is committed to taking care of

14   and supporting military service members and their families, touting that "[w]hen you join USAA, you

15   become part of a family who stands by you during every stage of your life."

16   23.    USAA offered and sold MedPay coverage to California consumers, including

17   Plaintiffs.

18   24.    Pursuant to its insurance policies with Plaintiffs and the putative class members,

19   USAA must pay all reasonable and necessary medical expenses incurred by a covered person arising

20   from a covered accident.

21   25.    The California insurance statutes and regulations promulgated under California

22   Insurance Code § 790.03(h), and Title 10, Chapter 5, Subchapter 7.5, are implied terms incorporated

23   by law into, and are a part of, Plaintiffs' and the putative class members' respective insurance policies

24   providing for MedPay.

25   26.    Under the California Insurance Code, § 790.03(h), the following are classified as

26   unfair methods of competition and unfair and deceptive acts or practices in the business of insurance

27   when they are knowingly committed or performed with such frequency as to indicate a general

28   practice:

a.     "Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies."

b.     "Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

c.     "Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application."

d.     "Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

27.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (b)(1), when "an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge."

28.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (d), insurers must "diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the resolution of a claim dispute."

29.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (e), "[n]o insurer shall delay or deny settlement of a first party claim on the basis that responsibility for payment should be assumed by others, except as may otherwise be provided by policy provisions, statutes or regulations, including those pertaining to coordination of benefits.

30.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (g), no insurer is allowed to "attempt to settle a claim by making a settlement offer that is unreasonably low."

31.     Pursuant to its insurance policies, USAA was required to pay its California covered MedPay benefits as follows:

a.     "[t]he amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

b.    "[t]he amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

c.    "[t]he amount negotiated with the provider; or

d.    "[t]he lesser of the following:

    a.    The actual amount billed; or

    b.    A reasonable fee for the service provided."

32.    USAA does not have an agreement with a PPO, PPN or similar organization, and there is no amount required, approved, or allowed by a fee schedule established by the State of California, the federal government, or other governmental entity in the relevant geographic area. Thus, under its agreements with its California insureds, USAA must pay the lesser of either the actual billed amount or a reasonable fee for the medical services provided.

33.    From at least February 20, 2019, to the present, thousands of USAA California insureds submitted reasonable medical expense bills for payment under MedPay coverage contained in policies purchased from USAA, and they will continue to do so.

34.    Under the terms of USAA's MedPay coverage, USAA assumed the obligation to conduct an investigation into each bill for medical expenses submitted, to make coverage decisions based on readily available information, and to pay all reasonable and necessary medical expenses incurred for the treatment of injuries sustained in a covered occurrence.

35.    Instead of conducting an investigation into each bill for medical expenses submitted, USAA has arbitrarily denied or reduced MedPay claims submitted by its California insureds by improperly delegating its insurance claims adjustment duties to AIS who, through its MBA process, arbitrarily and improperly reduces or denies MedPay claims.

**B.    USAA's Agreement with AIS to Provide Automated, Third-Party Bill Reviewing Services under its MBA Process Eliminates the Need for USAA's Adjusters to Investigate and Evaluate USAA's Insureds' MedPay Claims.**

36.    In furtherance of the scheme to deny or reduce the payment of MedPay benefits, USAA-Association, contracts with AIS to use AIS's MBA process to reduce or deny reimbursement of MedPay benefits.

37.     AIS is not an insurance company. Nevertheless, USAA uses AIS's MBA process and automated, third-party bill-reviewing services to eliminate the need for the USAA insurer's adjuster or claims representative to undertake any individual investigation and evaluation of USAA's insureds' MedPay claims. USAA's use of AIS ensures a uniform practice for denying or reducing these claims.

38.     Upon information and belief, AIS is incentivized to universally and arbitrarily reduce or deny medical payment reimbursements, using its automated computer system and bogus physician letters, by touting USAA's savings resulting from the unlawful scheme to obtain greater compensation.

39.     AIS serves as USAA's agent in connection with USAA's evaluation and adjusting of MedPay claims submitted by USAA insureds.

40.     USAA delegates its obligation to evaluate and adjust claims to AIS, including determining whether medical expenses are medically reasonable or necessary and/or causally connected to the accident, and for determining whether provider fees are reasonable.

41.     When insureds submit MedPay claims to USAA, USAA instructs these insured and their healthcare providers to send the supporting medical records and bills, including any appeals, to AIS, not USAA.

42.     Upon receipt of claim information from an insured, AIS conducts the MBA process. The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon, among other things, coding errors, sham medical necessity reviews, and non-existent PPO contracts and confidential statistical information, rather than through reviewing the individual character of health care services required by an insured, their related expenses, or their treatment provider.

43.     After AIS's MBA process reduces or denies reimbursement for MedPay claims, AIS generates and sends to USAA's insureds an Explanation of Reimbursement ("EOR") explaining, *inter alia*, the charge for medical treatment by the provider by service date, the amount by which

USAA denies or reduces the charge for medical treatment, the reimbursement amount, and the explanation for any reduction or denial.

**C. Using AIS's MBA Process, USAA Improperly Reduces MedPay Payments, Using PPO Codes, Based on Non-Existent Agreements with PPOs.**

44.     AIS programs its computer MBA System to automatically and arbitrarily deny, through the use of "PPO" codes, full payment of providers' bills covered by MedPay, and to instead pay a lower rate based upon allowable billing rates under undisclosed PPOs between other insurers and PPOs. USAA then reduces its reimbursement to its insured even though it has no direct PPO agreements with its insureds' healthcare providers or the PPOs.

45.     When a PPO code is listed as the reason for a reduction in reimbursement, USAA, through AIS, falsely explains in the EOR that the reduction is because "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient."

46.     In reality, USAA has no agreements with PPOs, and providers have not agreed with USAA that they will not seek additional payment from insureds.

47.     USAA applies these reduced MedPay reimbursements based on fictitious PPO agreements and without investigating the reasonableness of the charged amount.

48.     As a result of USAA's improper reduction of MedPay reimbursements based on non-existent PPO agreements with PPOs, insureds, among other things, are balance-billed by their healthcare providers, become the subject of collection actions by the providers seeking payment of the amounts that USAA refuses to pay, and/or remain under the threat of such actions.

**D. Using AIS's MBA Process, AIS Improperly Denies MedPay Payments, Using DOC Codes, Based on Requests for Irrelevant Additional Documentation, and Without USAA Conducting Any Independent Review.**

49.     USAA directs AIS to program its computer to automatically review each bill by line item and to flag and deny payment of medical bills covered under MedPay if certain documents are not attached to the bills. Even if the provider submitted documents substantiating the need for

treatment or its relationship to the auto accident, the computer denies payment of the bill if USAA's preset documentation requirement was not met.

50.     Instead of paying the claim, a "DOC" reason code is identified in the EOR sent to the insured and a request is made to the insured or provider to submit the additional unnecessary documentation.

51.     Such computer-generated denials are made without USAA adjusters conducting any investigation as to whether the documentation was needed to substantiate the necessity of the billed treatment.

**E. Using AIS's MBA Process, USAA Improperly Denies MedPay Payments, Using PR Codes, on the basis that the Medical Expenses are not medically reasonable or necessary and/or Causally Related to the Accident, Relying on Sham Reviews by Physicians Engaged by AIS, and Without USAA Conducting an Independent Review.**

52.     USAA denies reimbursement of MedPay claims amount, using PR codes, on the basis that the medical expenses are not reasonably medically necessary and/or causally related to the accident, relying on sham medical review services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical review services are conducted after bogus and arbitrary preset "flags" are triggered pursuant to guidelines programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily set number, *e.g.*, the 13th chiropractic visit.

53.     More specifically, the preset flags generate a bogus review by a nurse employed by AIS to purportedly determine whether medical expenses are medically reasonable or necessary and/or causally related to the accident. After the billing is routed to the physician engaged by AIS, the physician conducts a sham medical review to determine whether the medical expenses are medically reasonable or necessary and/or causally related to the accident and recommends that reimbursement be denied after only a cursory and hollow review of the insured's medical records. AIS then generates a bogus records review report created by the physician to substantiate its improper denials and reductions of payments for medically necessary treatment.

54.     AIS generates these sham records review reports without the AIS engaged physician conducting a physical examination of the insured, without communicating with the insured or treating

provider, and without basis in fact obtained from a reasonable investigation. AIS then prepares an EOR which denies reimbursement based on the sham physician review and records review report.

55.    USAA then denies reimbursement of the provider's charge and the EOR is sent by AIS to the insured based solely on the bogus records review report without USAA conducting any independent evaluation of the claims, and without any direct communication between AIS and USAA, and without any communication between USAA and the insured's provider.

56.    On information and belief, AIS pays its reviewers per records review report generated, which payment scheme improperly incentivizes the reviewers to generate records review reports hurriedly and without conducting a reasonable investigation into the medical necessity and reasonableness of the treatment provided to insureds.

57.    In short, USAA improperly delegates to AIS its obligations to conduct a reasonable and fair investigation, evaluation, and adjustment of insureds' claims. USAA then denies reimbursement of its insureds' MedPay claims using AIS's MBA process and bogus physician review.

**F.  Using AIS's MBA Process, USAA Improperly Denies MedPay Payments, Using GR Codes, on the Basis that the Medical Expenses are Not Causally Related to the Accident, and Without USAA Conducting Independent Review**

58.    USAA denies reimbursement of MedPay claims amount, using GR codes, *viz.*, GR84, and advising the insured that the "Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident. Should this be an error, submit a corrected bill and include medical records for verification for the dates of service billed. Otherwise, services not related to an auto accident are not reimbursable."

59.    Before denying payment through AIS's MBA Process and GR code, USAA's adjusters do not investigate whether the medical treatment rendered is related to an auto accident. Instead, USAA simply rubber stamps the AIS determination and denies reimbursement.

**G.  Using AIS's MBA Process, USAA Improperly Reduces MedPay Payments, Using Reasonable Fee, or RF Codes,  That Rely on Unsupported and Arbitrary Bill Thresholds, and Without USAA Conducting an Independent Review.**

60.    In furtherance of its scheme to deny or reduce the payment of MedPay benefits, USAA relies on AIS's automated review process to use preset "reasonable fee" or "RF" codes, as directed

1    by USAA. Specifically, USAA refuses to pay medical provider bills whenever an automated review
2    process, conducted by AIS pursuant to the MSA, indicates that the charge for a particular procedure
3    exceeds a certain arbitrary threshold established in a database maintained by the actuarial firm
4    Milliman, Inc. (the "Milliman Database"). If the provider's fee for a specific CPT code is more than
5    $9.99 above the Milliman 80th percentile amount for the same CPT procedure, the computer
6    automatically denies the payment and sets the reimbursement amount at the 80th percentile amount.
7    The computer then creates an Explanation of Reimbursement ("EOR") form which AIS sends to the
8    USAA insured identifying the reason for the reduced payments as an "RF," *viz.,* "Reasonable Fee,"
9    reason code, and advising the insured that "[t]he charge exceeded a reasonable amount for the service
10   provided." USAA does not conduct any independent or individualized review to assess whether the
11   charge is a reasonable and necessary medical expense.

12       61.    The Milliman Database used by USAA to arbitrarily and improperly reduce the
13   payment of MedPay benefits is comprised of an outdated 5% nationwide sample of charge data from
14   patients over 65 collected by Medicare, has no bearing on the reasonableness of charges for the
15   medical services provided by USAA's insureds, does not reflect the entire range of fees charged in a
16   geographic area where the medical services are provided, and is comprised of data not organized by
17   a provider's years of experience, background, or qualifications and credentials, including board
18   certification. Nor does the Milliman Database take into consideration the severity of the accident, the
19   patient's age, or pre-existing conditions.

20       62.    Before denying payment through AIS's MBA Process and RF code, USAA's adjusters
21   do not investigate the provider's charges or determine "the reasonable fee" for that provider's
22   services. AIS's computer drafts the EOR relying exclusively on the 80th percentile of the Milliman
23   Database. AIS does not communicate with the patient, insured or treating provider. And AIS makes
24   these computer generated determinations and calculations without knowledge of the insured's health
25   treatment plan in place. Instead, USAA simply rubber stamps the AIS calculation, and sends the
26   provider a reduced check, along with the deceptive EOR stating that the denial or reduction is based
27   on an "RF Reason Code," and falsely asserting that the amount billed "exceeds a reasonable amount
28   for the service provided."

63.     When USAA Group denies and reduces payment based on an RF code it is making no determination that the amount billed is in fact "unreasonable." Instead, USAA Group's choice of the 80th percentile of billed charges for each procedure in each Medicare defined geographic area is arbitrary.

64.     As a result of USAA's improper reduction of MedPay reimbursements based on RF codes, insureds, among other things, are balance-billed by their healthcare providers, become the subject of collection actions by the providers seeking payment of the amounts that USAA refuses to pay, and/or remain under the threat of such actions.

### H.   USAA Entered into a Stipulation and Consent Order with the State of Vermont Agreeing to, *Inter Alia*, Discontinue Its Use of Physician Review Letters.

65.     USAA's use of medical reviews by AIS engaged physicians to deny MedPay claims was one of the subjects of the market conduct examination ("MCE") conducted by the Insurance Division of the Vermont Department of Financial Regulation ("Department") resulting in the entry of a Stipulation and Consent Order on May 18, 2018, in *In The Matter Of: United Services Automobile Association (USAA) (NAIC #25941); UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY,  (NAIC #25968); USAA General Indemnity Company (NAIC #18600); Garrison Property and Casualty Insurance Company (NAIC #21253)*, Docket No. 17-010-I ("Vermont Consent Order").

66.     In the Vermont Consent Order, the Department found that USAA engaged in unfair and deceptive acts and practices by, *inter alia,* "accepting the initial payment recommendations made by its third-party vendor [AIS] with a lack of documentation describing adjusting activities by the adjuster," "potentially creating balance billing problems for the claimant by reducing the amount of an auto medical bill by determining what constitutes a 'reasonable fee' and only paying that amount," "[a]ccepting the third-party vendor's [AIS] determination regarding medical necessity without questioning the claimant or the provider;" and "[d]enying coverage without conducting a reasonable investigation." Examples include: "a. Accepting the third-party vendor's determination regarding medical necessity without questioning the claimant or the provider; and b. Denying coverage without conducting a reasonable investigation." Vermont Consent Order at 2-3.

CLASS ACTION COMPLAINT

67.     In the Vermont Consent Order, USAA, among other things, agreed that it "no longer review claims for medical necessity and have discontinued the use of physician review letters." *Id.* at 5-6.

68.     Additionally, USAA agreed to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," including "guidelines and training material which emphasize the requirement to conduct a reasonable investigation prior to making a determination." *Id.*, ¶ 22.

69.     USAA acknowledged "that [the Vermont Consent Order] constitutes a finding by the Commissioner that [USAA has] violated the provisions of Vermont law set forth above and agree not to contest such findings." *Id.*, ¶ 18.

**I.     USAA Uses AIS to Adjust USAA Claims Nationwide,**

70.     On information and belief, AIS, pursuant to its contract with USAA-Association, uses its systems designed to systematically, wrongfully, and arbitrarily deny USAA's insureds' MedPay benefits owed under their USAA insurance policies nationwide, with the possible exception of Vermont (in view of the Vermont Consent Order).

71.     Although USAA, under the Vermont Consent Order, agreed to cease engaging in these practices in Vermont, it nevertheless continues to engage in these practices in other states, including California, unless ordered to cease engaging in such conduct.

72.     AIS's corporate designee has described AIS's "standard workflow diagram," which is the process employed by AIS nationwide on behalf of USAA when generating an EOR, as evidenced in a reply brief published in Westlaw:

> Q. I really don't want to rehash this, but you were talking about how medical bills come in and they are processed and then you talked about indexing. You kept talking about all these steps about how a claim eventually results in an EOR, right?
>
> A. [Tina Senftle – AIS's corporate designee]. Yes.
>
> Q. What would you describe that process?
>
> A. **That's a workflow diagram.**
>
> Q. Workflow diagram. Is there a workflow diagram that shows how USAA's Medpay claims are processed by the AIS software?
>
> A. Specific to Montana?

CLASS ACTION COMPLAINT

Q. Yes.

A. No.

Q. The next question is going to be, is there one that is more general to the United States as a whole?

A. I mean, there is a diagram that shows the workflow, yes.

Q. What is that document called, "workflow diagram"?

A. I don't know that it has a name, but yeah.

Q. The diagram that you reference, does the workflow diagram apply to claims processed in Montana?

A. **It would be a standard workflow.**[5]

73.     USAA knows that its computer-based billing scheme is harming its insureds – mostly consisting of U.S. military veterans and their families – both financially and physically. Yet USAA will only cease engaging in its billing scheme until ordered to do so on a state-by-state basis as evidenced by USAA continuing to engage in its billing scheme even after it, and its affiliated companies, entered into the Vermont Consent Order:

74.     In its Rule 30(b)(6) deposition addressing, *inter alia*, the Vermont Consent Order and USAA's conduct thereafter  in this matter, USAA testified generally that even though Montana's UTPA is essentially the same as Vermont's, it gave no consideration to changing its business practices in Montana in a similar fashion. Plaintiffs' expert, Dave Bauer, has opined "given my 20 years as in-house counsel for a major insurance company, I find it suspect that USAA upper management has not discussed the Vermont Order in detail and whether it should review its practices in Montana and all other states where it does business." [6]

**J.   USAA, through AIS's MBA Process, Unlawfully Denied Reimbursement for Plaintiff Horlieca's MedPay Claims.**

75.     Plaintiff Horlieca was injured in an automobile accident on February 10, 2019 while insured by USAA. Specifically, Plaintiff Horlieca had $25,000 in MedPay coverage through USAA.

---

[5] Reply Brief in Support of Plaintiffs' Third Motion to Compel, *Byorth v. USAA Cas. Ins. Co.*, No. 20CV00076, 2019 WL 9851641, at *5-6 (D. Mont. Mar. 8, 2019) (emphasis in original).
[6] Brief in Opposition to USAA's Motion in Limine to Exclude Vermont Stipulation and Consent Order, *McKean v. USAA Cas. Ins. Co.*, No. 20-76-BLG-KLD, 2020 WL 4783602 (D. Mont. July 27, 2020).

CLASS ACTION COMPLAINT

76.    Plaintiff Horlieca sought and received medical treatment for injuries he suffered in this accident. The medical treatment Plaintiff received was causally related to his injuries and was reasonable and necessary.

77.    More specifically, Plaintiff Horlieca sought and received medical treatment for injuries he suffered in the February 10, 2019, accident, and USAA either denied reimbursement for this medical care including, but not limited to, the following:

a.    Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on April 17, 2019, May 20, 2019, June 19, 2019, July 17, 2019, August 14, 2019, September 11, 2019, October 3, 2019, October 8, 2019, October 25, 2019, November 22, 2019, December 20, 2019, January 17, 2020, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated June 30, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting to $14,921.99 on the basis of GR84 ("Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident. Should this be an error, submit a corrected bill and include medical records for verification for the dates of service billed. Otherwise, services not related to an auto accident are not reimbursable.").

b.    Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on October 2, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated July 9, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting to $152.00 on the basis of GR84 ("Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident. Should this be an error, submit a corrected bill and include medical records for verification for the dates of service billed. Otherwise, services not related to an auto accident are not reimbursable.").

c.    Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on February 20, 2019, March 29, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated July 15, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting

1   to $ 3333.84 on the basis of DOC65 ("In order to make a reimbursement decision, the daily treatment

2   notes, tests and measurements are needed to support the service provided").

3          d.      Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on

4   October 8, 2019, October 25, 2019, November 22, 2019, December 20, 2019, January 17, 2020, April

5   17, 2019, May 20, 2019, June 19, 2019, July 17, 2019, August 14, 2019, September 11, 2019, in

6   connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In

7   its EOR provided to Plaintiff Horlieca dated July 15, 2020 (*viz.*, "Receive Date"), USAA, through

8   AIS, denied reimbursement for this medical care amounting to $14,769.99 on the basis of DOC65

9   ("In order to make a reimbursement decision, the daily treatment notes, tests and measurements are

10  needed to support the service provided").

11         e.      Plaintiff Horlieca received orthopedic care from San Bernardino Medical Ortho

12  Group, on February 28, 2019, June 5, 2019, September 6, 2019, November 13, 2019, January 9, 2020,

13  February 6, 2020, March 13, 2019, May 9, 2019, June 5, 2019, in connection with his injuries

14  sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff

15  Horlieca dated July 26, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for

16  this medical care amounting to $7,877.50 on the basis of DOC55 ("In order to make a reimbursement

17  decision, documentation is needed to support the medical necessity for continued care or treatment.

18  Documentation must include all records, such as patient history, evaluations, test results, progress

19  notes, prescriptions and treatment plans.").

20         f.      Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on

21  October 8, 2019, October 25, 2019, November 22, 2019, December 20, 2019, January 17, 2020, April

22  17, 2019, May 20, 2019, June 19, 2019, July 17, 2019, August 14, 2019, September 11, 2019, October

23  8, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile

24  accident. In its EOR provided to Plaintiff Horlieca dated August 20, 2020 (*viz.*, "Receive Date"),

25  USAA, through AIS, denied reimbursement for this medical care amounting to $14,769.99 on the

26  basis of DOC65 ("In order to make a reimbursement decision, the daily treatment notes, tests and

27  measurements are needed to support the service provided.").

28

g.      Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on February 20, 2019, March 20, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated August 10, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting to $3,333.84 on the basis of DOC65 ("In order to make a reimbursement decision, the daily treatment notes, tests and measurements are needed to support the service provided.").

h.      Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on February 20, 2019 and March 20, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated September 9, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting to $3,333.84 on the basis of DOC65 ("In order to make a reimbursement decision, the daily treatment notes, tests and measurements are needed to support the service provided.").

i.      Plaintiff Horlieca received orthopedic care from Riverside Regional Pain Center, on October 8, 2019, October 25, 2019, November 22, 2019, December 20, 2019, January 17, 2020, April 17, 2019, May 20, 2019, June 19, 2019, July 17, 2019, August 14, 2019, September 11, 2019, October 8, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated September 9, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting to $14,769.99 on the basis of DOC65 ("In order to make a reimbursement decision, the daily treatment notes, tests and measurements are needed to support the service provided.").

j.      Plaintiff Horlieca received orthopedic care from San Bernardino Medical Ortho Group, on February 28, 2019, June 5, 2019, September 6, 2019, November 13, 2019, January 9, 2020, February 6, 2020, March 13, 2019, May 9, 2019, June 5, 2019, in connection with his injuries sustained resulting from his February 10, 2019, automobile accident. In its EOR provided to Plaintiff Horlieca dated September 24, 2020 (*viz.*, "Receive Date"), USAA, through AIS, denied reimbursement for this medical care amounting to $7,877.50 on the basis of DOC55 ("In order to make a reimbursement decision, documentation is needed to support the medical necessity for

continued care or treatment. Documentation must include all records, such as patient history, evaluations, test results, progress notes, prescriptions and treatment plans.").

78.     Although USAA, through AIS's MBA process, denied reimbursement of Plaintiff Horlieca's MedPay claims based on, *inter alia*, a GR 84 code and that the medical treatment rendered was not related to an auto accident, USAA did not conduct an individual adjustment of the claim or review of the medical treatment Mr. Horlieca received. And no physician reviewed Mr. Horlieca's records, spoke with him, or conducted a physical evaluation of him, or spoke with any of his providers.

79.     Although USAA, through AIS's MBA process, denied reimbursement of Plaintiff Horlieca's MedPay claims based on not having sufficient medical records, at no point did USAA or AIS contact any of Mr. Horlieca's providers or attempt to acquire the records from these providers, or do anything to advance Mr. Horlieca's claim.

### K. USAA, through AIS's MBA Process, Unlawfully Denied and Reduced Reimbursement for Plaintiff Warner's MedPay Claims.

80.     Plaintiff Warner was injured in an automobile accident on August 20, 2018, while insured by USAA. Specifically, Plaintiff Warner had $25,000 in MedPay coverage through USAA.

81.     Plaintiff Warner sought and received medical treatment for injuries he suffered in this accident. The medical treatment Plaintiff received was causally related to his injuries and was reasonable and necessary.

82.     More specifically, Plaintiff Warner sought and received medical treatment for injuries he suffered in the August 20, 2018, accident, and USAA denied and reduced reimbursement for this medical care including, but not limited to, the following:

a.     Plaintiff Warner received emergency care from Monica Marie Gascon, on August 20, 2018, in connection with his injuries sustained resulting from his August 20, 2018, automobile accident. In its EOR provided to Plaintiff Warner dated February 21, 2019 (*viz.*, "Receive Date"), USAA, through AIS, reduced reimbursement from a charged amount of $295.00 to a paid amount of $262.55 on the basis of PPO ("This service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also

1   has agreed not to seek any additional payment from the patient If you are the service provider, and

2   you do not agree that this service is subject to such an agreement, or you have any other question

3   about this issue, please contact Customer Service.").

4            b.   Plaintiff Warner received chiropractic care from Marguerite C Elcenko, on August 23,

5   2018, August 25, 2018, August 27, 2018, August 30, 2018, September 4, 2018, September 6, 2018,

6   September 8, 2018, September 11, 2018, September 13, 2018, September 17, 2018, September 18,

7   2018, September 20, 2018, September 22, 2018, September 25, 2018, September 27, 2018, October

8   2, 2018, October 15, 2018, October 18, 2018, November 5, 2018, November 13, 2018, November 15,

9   2018November 24, 2018, November 26, 2018, November 29, 2018, December 6, 2018, in connection

10  with his injuries sustained resulting from his August 20, 2018, automobile accident. In its EOR

11  provided to Plaintiff Warner dated October 20, 2021 (*viz.*, "Receive Date"), USAA, through AIS,

12  denied reimbursement for this medical care amounting to $2,815.00 on the basis of DOC65 ("In order

13  to make a reimbursement decision, the daily treatment notes, tests and measurements are needed to

14  support the service provided.").

15       **V.   CLASS ALLEGATIONS**

16       83.   Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil

17  Procedure.

18       84.   The proposed class consists of:

19  All persons (1) who were insured under the MedPay coverage of a California automobile
    insurance policy issued by USAA; (2) who received medical, health care, or rehabilitation
20  services, or medication or equipment, from a health care provider; (3) who made a claim
    under the MedPay coverage of that policy; (4) who submitted (or whose health care
21  provider submitted) to USAA a bill for such services or products; and (5) who had that bill
    reduced or denied by a PPO code; or Physician Review, or PR code; or DOC code, or GR
22  code (the "Class").

23       85.   Excluded from the Class are USAA's officers, directors, affiliates, legal

24  representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are

25  any judge, justice, or judicial officer presiding over this matter and the members of their immediate

26  families and judicial staff.

27

28

86.     The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as USAA remedies the conduct complained of herein.

87.     **Numerosity**: The Class is estimated to include thousands of USAA California insureds. Specifically, during the class period, more than 1,000 California insureds submitted reasonable and necessary medical expense bills for payment under a USAA MedPay policy and had their payments improperly denied or reduced based on Reasonable Fee, Physician Review (PR), DOC, PPO and GR reason codes. The putative Class consists of residents of multiple counties in California and is geographically diverse. Thus, the size and geographical location of the Class renders individual joinder of all members impracticable. While the exact numbers of the members of the Class are unknown to Plaintiffs at this time, membership in the Class may be ascertained from the records maintained by USAA.

88.     **Commonality**: The Class's claim arises from a common process and common practices used by USAA in adjusting and paying MedPay claims. The common process includes the use of AIS's MBA process to perform an automated computerized bill review that includes common practices in denying or reducing charges based on certain preset flags, codes, criteria, and limitations, bogus medical reviews, and no adjusting of MedPay claims by USAA adjusters. Among these common practices are denials and reductions that are based on certain reason codes that appear on the EOR(s) sent to the insured and providers. The common questions of fact and law include:

    i.     Whether USAA entered into agreements to provide MedPay coverage and therein gave itself discretion to pay its California insureds any amount it wanted?

    ii.    Whether USAA improperly delegates its duty to conduct an independent evaluation and adjustment of claims to AIS, without USAA conducting any adjusting of MedPay claims?

    iii.   Whether USAA arbitrarily reduces MedPay benefits through the improper use of PPO codes?

    iv.    Whether USAA arbitrarily reduces MedPay benefits through the improper use of RF codes?

1    v.      Whether USAA arbitrarily reduces MedPay benefits through the improper use of

2    bogus physician reviews?

3    vi.      Whether USAA arbitrarily reduces MedPay benefits through the improper use of

4    DOC codes?

5    vii.     Whether USAA arbitrarily reduces MedPay benefits through the improper use of

6    GR codes?

7    viii.    Whether USAA's complained of practices violate USAA's insurance contracts

8    with its California insureds?

9    ix.      Whether USAA's denials and reductions of MedPay claims are based on its use of

10   AIS's MBA process which uses an arbitrary automated, computer-generated review?

11   x.      Whether USAA has a practice of relying solely on AIS to make denials and

12   reductions of PIP claims without conducting their own independent investigation or individualized

13   investigation based on all "available" information including, for example, the severity of the

14   accident, the age and preexisting condition of the patient, the provider's background, years of

15   experience, credentials or other individual attributes?

16   89.    **Typicality**: The claims of the individual Plaintiffs arise from the same common

17   practices and scheme used by USAA to process the claims of the members of the Class. In each

18   instance, USAA used AIS to perform an automated, computer-generated bill review that resulted in

19   improper denials or reductions in payment of charges submitted pursuant to MedPay claims. The

20   same criteria applied by AIS in processing the charges submitted by the Plaintiffs on their MedPay

21   claim were applied to the charges submitted by all Class members. Plaintiffs' claim is based upon the

22   same factual and legal theories as those of the Class. All Class members will benefit by the action

23   brought by Plaintiffs by obtaining relief in the manner described below, including, but not limited to,

24   damages and/or declaratory and injunctive relief.

25   90.    **Predominance**: Common questions predominate because USAA undertook a

26   common course of conduct towards all members of the Class and applied its practices and scheme at

27   issue to all bills submitted under its MedPay coverage during the class period.

28

91.    **Superiority**: Class certification is proper where a class action is a superior method for adjudicating the claims of thousands of Class members located in California that raise identical factual and legal issues concerning USAA's MedPay processing and payment practices scheme. Class certification is a superior method of adjudicating the claims alleged herein where it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions and inconsistent adjudications of identical claims.

92.    Class certification is a superior method of adjudicating the claims alleged herein where the individual Class members have little interest in or time to individually controlling the prosecution of their claims.

93.    Class certification is a superior method of adjudicating the claims alleged herein where it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions and inconsistent adjudications of identical claims. The cost to the court system of the various counties where Class members are located would be substantial if the claims were adjudicated individually.

94.    Class certification is a superior method of adjudicating the claims alleged herein because there are few difficulties likely to be encountered in the adjudication of the Class members' claims. Other, similar class actions based on the same factual and legal issues have been certified throughout the United States.

95.    **Adequacy of Representation**: Plaintiffs are USAA insureds who had payment of charges submitted on MedPay claims denied or reduced because of USAA's improper practices described above. Plaintiffs have the same interest as members of the Class in ensuring that USAA does not use improper processes and practices to deny or reduce MedPay claims. Plaintiffs have no conflicts with the interests of the Class. Plaintiffs have retained competent counsel with experience litigating consumer class actions, as well as breach of contract, and other insurance claims. Plaintiffs and their chosen counsel will fairly and adequately protect the interests of the Class.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing Against Defendants**
**(On Behalf of All Plaintiffs and the Class)**

96.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

97.     Plaintiffs and other Class members entered into written insurance contracts with USAA that provided for MedPay benefits.

98.     Pursuant to the contracts, in exchange for insureds' premium payments, USAA implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of MedPay benefits to Plaintiffs and Class Members.

99.     USAA breached its insurance agreement with Plaintiffs and Class members by, among other things:

a.     Improperly delegating its claims adjustment function to AIS which uses its MBA process to arbitrarily and improperly deny or reduce MedPay claims;

b.     Improperly reducing MedPay claim payments based on an EOR stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into PPO or PPN agreements with providers;

c.     Reduced PIP claim payments based on an EOR attaching a letter written by a physician (i) engaged by AIS; (ii) who is not licensed in the relevant state; (iii) who does not specialize in the area under review; (iv) who conducts only a paper review; (v) who does not physically examine the patient or speak with the patient; and (vi) who has never spoken with the insureds' provider regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA-Association.

d.     Improperly denying full payment of MedPay claims based on DOC codes whereby USAA directs AIS to program its computer to deny payment of medical bills covered under MedPay claims if certain documents are not attached to the bills, even though the documentation is not needed to substantiate the necessity of the billed treatments, and without USAA conducting

1  any independent investigation, but instead relying only on AIS's arbitrary automated MBA

2  process.

3        e.    Denied full payment of MedPay claims by improperly delegating its duty to

4  evaluate and adjust MedPay claims to AIS which used an arbitrary automated review process. This

5  includes using arbitrary and automated reason codes, including, *inter alia*, DOC and RF codes,

6  without USAA conducting an independent investigation.

7        f.    Improperly denying full payment of MedPay claims based on GR codes whereby

8  USAA directs AIS to program its computer to deny payment of medical bills covered under

9  MedPay claims based on automatic bill processing through computer based on relation to a motor

10  vehicle collision, without USAA conducting any independent investigation, but instead relying

11  only on AIS's arbitrary automated MBA process.

12      100.   USAA's practices as described herein violated its duties to Plaintiffs and Class

13  members under the insurance contracts and California law.

14      101.   USAA's practices as described herein constitute an unreasonable denial to pay benefits

15  due to Plaintiffs and Class members in breach of the implied covenant of good faith and fair dealing

16  arising from USAA's insurance contracts.

17      102.   USAA's wrongful reduction of MedPay benefits damaged Plaintiffs and Class

18  members.

19                 **SECOND CLAIM FOR RELIEF**

    **Violation of The Business and Professions Code § 17200 Against Defendants**

20                   **(On Behalf of All Plaintiffs and the Class)**

21      103.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every

22  allegation contained above as though the same were fully set forth herein.

23      104.   Plaintiffs John Horlieca and Darryl Warner bring this claim for violation of California

24  Business and Profession Code § 17200 on behalf of themselves and the Class members.

25      105.   California Business and Professions Code § 17200 (the "Unfair Competition Law")

26  prohibits acts of "unfair competition" including and "unlawful, unfair or fraudulent business act of

27  practice."

28

106. USAA's practice of denying medical charges based on causation and necessity through sham physician reviews, and denying and reducing claims through AIS's arbitrary MBA process without independent review is an unfair business practice proscribed by §17200. There is no reasonable basis for these denials and reductions. USAA's practice and scheme is substantially injurious to consumers and has allowed USAA to be unjustly enriched at the consumers' expense. This substantial injury is not outweighed by any countervailing benefits to consumers or competition.

107. USAA violated the Unfair Competition Law by violating the California Insurance Code § 790.03(h).

108. USAA violated the Unfair Competition Law when it failed to implement reasonable standards for the prompt investigation and processing of claims arising under its MedPay policies for Plaintiffs and Class members.

109. USAA violated the Unfair Competition Law when it did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims for Plaintiffs and Class members.

110. USAA violated the Unfair Competition Law when it attempted to settle claims for Plaintiffs and Class members for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

111. USAA's actions violate the unlawful prong of § 17200 because they violate California's express statutory and regulatory requirements regarding insurance claims handling pursuant to California Insurance Code § 790.03(h), including those set forth above.

112. USAA's actions violate the unfair prong of § 17200 because the acts and practices set forth above, including USAA's use of automated computer processing to deny claims, delegation of adjustment duties to AIS, use of non-existing PPO agreements, delay of payment based on unnecessary documents, and automated denial based on medical necessity or causation, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. USAA's actions also violate the unfair prong because they constitute a systematic breach of consumer contracts.

CLASS ACTION COMPLAINT

113.   USAA has violated the fraudulent business practices prong of § 17200 because the misrepresentations and omissions regarding the MedPay insurance policies and Plaintiffs' rights under the policy, including the denial of claims on sham pretenses, were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

114.   As a direct and proximate result of USAA's violation of § 17200, Plaintiffs and Class members have been injured in fact and suffered lost money or property in that USAA failed to provide benefits owed to their insureds under the insurance policies USAA issued.

115.   To date, USAA continues to violate the Unfair Competition law by breaching its insurance contracts.

116.   To date, Plaintiffs and Class members are still insured by USAA.

117.   Plaintiffs and Class members are realistically threatened by USAA's future repetition of the violations of the California Insurance Code § 790.03(h).

118.   Pursuant to § 17203 of the Unfair Competition Law, Plaintiffs and Class members, are seeking an order enjoining USAA from denying or reducing benefits owed to USAA insureds through its scheme involving AIS's MBA process and sham medical reviews. Without such an order, there is a continuing threat to Plaintiffs and the Class members, as well as to members of the general public, that USAA will continue to deny and reduce benefits to California consumers.

119.   USAA's scheme is especially harmful to the general public because MedPay coverage extends not only to the named insureds, but to others who drive vehicles insured by USAA through permissive use.

**THIRD CLAIM FOR RELIEF**
**Declaratory Relief**
**(On Behalf of All Plaintiffs and the Class)**

120.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

121.   There exists a present controversy between the parties as to whether USAA's use of AIS's MBA process using RF codes, PPO codes, DOC codes, GR codes  and sham medical reviews to deny and reduce benefits owed to USAA violates California's insurance law, including statutory

and regulatory requirements regarding insurance claims handling pursuant to California Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

122.    Plaintiffs and the members of the Class contend that USAA's use of AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA's insureds' MedPay claims violates California insurance law, including  California Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

123.    Accordingly, Plaintiffs and the members of the Class request the Court to issue an order declaring that USAA's use of AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA's insureds' MedPay claims using RF codes, PPO codes, DOC codes, GR codes and medical reviews violates California insurance law, including California Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

## VI.    **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter an order granting the following relief against USAA:

      a.    Awarding actual damages, statutory damages, exemplary/punitive damages, costs and attorneys' fees.

      b.    Awarding disgorgement and/or restitution.

      c.    Awarding pre-judgment interest to the extent permitted by law.

      d.    Appropriate declaratory and injunctive relief enjoining USAA from continuing its improper and unlawful claims handling practices as set forth herein.

      e.    Such other and further relief as the Court may deem just and proper.

## VII.    **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims in this Complaint so triable.

1  DATED: February 20, 2023

**LAW OFFICES OF STEVEN R. YOUNG**

2  */s/ Steven R. Young*

STEVEN R. YOUNG (SBN 96258)

3

**FRANKLIN D. AZAR & ASSOCIATES, P.C.**

4  FRANKLIN D. AZAR

MICHAEL D. MURPHY

5  TIMOTHY L. FOSTER

BRIAN HANLIN

6  ALEXANDER F. BEALE

MARGEAUX R. AZAR

7

8  *Attorneys for Plaintiffs and the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28