ROBERT S. LEVIN (SBN 105970)
JAMES E. HOFFMANN (SBN 91876)
**LEVIN & HOFFMANN, LLP**
23622 Calabasas Road, Suite 253
Calabasas, CA 91302
Phone Number: (818) 990-2370
Fax Number: (800) 572-9590

STEVEN R. YOUNG (SBN 96258)
**LAW OFFICES OF STEVEN R. YOUNG**
95 Enterprise Suite 340
Aliso Viejo, CA 92656

FRANKLIN D. AZAR (*pro hac vice*)
MICHAEL D. MURPHY (*pro hac vice*)
DEZARAE D. LACRUE (*pro hac vice*)
TIMOTHY L. FOSTER (*pro hac vice*)
BRIAN HANLIN (*pro hac vice*)
KEVIN J. DOLLEY (*pro hac vice*)
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, Colorado 80014
Phone Number: (303) 757-3300
Fax Number: (720) 213-5131
*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HORLIECA AND DARRYL WARNER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs(s), <br><br> vs. <br><br> UNITED SERVICES AUTOMOBILE ASSOCIATION AND USAA CASUALTY INSURANCE COMPANY, <br><br> Defendants. | Case No.: 5:23-cv-00278-KK-SP <br><br> **DISCOVERY MATTER** <br><br> **NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL** <br><br> Hearing Date: January 30, 2024 <br> Time: 10:00 a.m. <br> Place: Courtroom 4 (Riverside) <br> Date Action Filed: February 20, 2023 <br> Discovery Cut Off: March 31, 2025 <br> Pretrial Conf. Date: July 21, 2025 <br> Trial Date: August 5, 2025 <br> Assigned to Hon. Kenly Kiya Kato <br> Referred to Magistrate Judge Pym |

# NOTICE OF MOTION

TO THE HONORABLE JUDGE SHERI PYM, UNITED STATES MAGISTRATE JUDGE:

PLEASE TAKE NOTICE that on January 30, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the United States District Court for the Central District of California, Eastern Division, located at 3470 Twelfth Street, Riverside, CA 92501-3801, pursuant to Local Rules 7-3 and 37 and Fed. R. Civ. P. 26, 34, and 37, Plaintiffs John Horlieca and Darryl Warner (hereinafter "Plaintiffs") hereby request a hearing before this Court on Plaintiffs' First Motion to Compel; and Plaintiffs and Defendants United Services Automobile Association and USAA Casualty Insurance Company (collectively "USAA" or "Defendants"), hereby submit the following Joint Stipulation as to Plaintiffs' First Motion to Compel.

This case was previously assigned to the Honorable Jesus G. Bernal. Judge Bernal's Civil Trial Scheduling Order indicates that "[d]iscovery disputes have been referred to the United States Magistrate Judge assigned to this case." (ECF 50, p. 3). On or about November 20, 2023, this case was ordered transferred to the Honorable Judge Kenly Kiva Kato. (ECF 59-60). Judge Kato's Standing Order provides that "[a]ll discovery matters have been referred to the assigned magistrate judge, who will hear all discovery disputes."

Plaintiffs herein request an Order compelling USAA to fully respond to Interrogatory No. 8 from Plaintiffs' Second Set of Interrogatories to Defendants, served on October 19, 2023, and to produce documents responsive to Request for Production No. 73 from Plaintiffs' Second Set of Requests for Production of Documents to Defendants, served on October 19, 2023. This Motion is made following the conferral between counsel for the Parties pursuant to Local Rule 7-3 which took place on Tuesday, December 5, 2023.

1  DATED: December 20, 2023          **FRANKLIN D. AZAR & ASSOCIATES,**
2                                     **P.C.**

3                                     */s/ Kevin J. Dolley*
4                                     KEVIN J. DOLLEY (*pro hac vice*)
                                       *Attorneys for Plaintiffs and the Proposed Class*
5

6  DATED: December 20, 2023          **ARENTFOX SCHIFF LLP**

7                                     */s/ Paula M. Ketcham*
8                                     PAULA M. KETCHAM
                                       *Attorneys for Defendants*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.  JOINT STATEMENT OF PROCEDURAL POSTURE RELATED TO THIS MOTION ................................................................................1

II. INTRODUCTORY STATEMENTS ...............................................2

    A.      Plaintiffs' Introduction....................................................2

    B.      Defendants' Introduction ................................................5

III.PLAINTIFFS' WRITTEN DISCOVERY REQUESTS AT ISSUE..................8

IV.      PLAINTIFFS' POINTS AND AUTHORITIES ......................................9

    *Plaintiffs' Good Faith Efforts to Resolve the Dispute* .................................9

    *USAA's Boilerplate Objections Are Improper*...........................................10

        •     Plaintiffs' request for the putative class members' contact information is relevant and proportionate to the needs of this case. .........................................................11

        •     Plaintiffs' requests are neither overly broad nor unduly burdensome. .............................................................14

        •     Plaintiffs' requests are neither vague nor ambiguous. .......14

    *USAA's Confidentiality Objection Is Alleviated by the Entry of a Protective Order and/or a Belaire-West Notice and Opt-Out Process* ..............................................................................15

    *Conclusion* ........................................................................19

V. DEFENDANTS' POINTS AND AUTHORITIES ...........................................20

    *The Personal Identifying Information of Absent Putative Class Members Is Not Relevant to Plaintiffs' Claims.* .....................20

    *Plaintiffs Seek to Unnecessarily Invade the Absent Putative Class Members' Privacy Rights, Which Outweigh the Scant-to-Zero Relevance of the Information Sought.* .................................25

    *If the Information Sought Is to Be Produced, the Proper Procedure Is to Have Insureds Provide Authorization (i.e., Opt in) Before Disclosure.* ........................................................................27

    *Conclusion* ........................................................................29

**JOINT STIPULATION**

**I.     JOINT STATEMENT OF PROCEDURAL POSTURE RELATED TO THIS MOTION**

On October 19, 2023, Plaintiffs served upon USAA, Interrogatory No. 8 and Request for Production ("RFP") No. 73, which are the sole requests that comprise Plaintiffs' Second Set of Interrogatories to Defendants ("Second Set of Interrogatories") and Plaintiffs' Second Set of Requests for Production of Documents to Defendants ("Second Set of RFPs"), respectively. These discovery requests are collectively referred to herein as the "Discovery Requests." (Declaration of Kevin J. Dolley ("Dolley Decl."), filed herewith, ¶ 3 & Exs. A-B).

On November 20, 2023, USAA served their Answers and Objections to Plaintiffs' Second Set of Interrogatories and their Responses and Objections to Plaintiffs' Second Set of RFPs. (Dolley Decl., ¶ 4 & Exs. C-D).

On November 28, 2023, counsel for Plaintiffs sent a deficiency letter to counsel for USAA indicating the asserted deficiencies in USAA's written discovery responses. (Dolley Decl., ¶ 5 & Ex. E). On Tuesday, December 5, 2023, counsel for the Parties met and conferred by Zoom. (Dolley Decl., ¶ 6). Counsel for the Parties are located in different counties. (*Id.*). The conferral meeting did not resolve the discovery dispute, and the Parties are at an impasse. (*Id.*).

1    **II.     INTRODUCTORY STATEMENTS**

2          **A.     Plaintiffs' Introduction**

3          Plaintiffs bring this motion to compel USAA to produce the putative class

4    members' contact information as requested by Plaintiffs in their Interrogatory No. 8

5    and RFP No. 73. As shown herein, courts in the Ninth Circuit have regularly held that

6    "'[c]ontact information regarding the identity of potential class members is generally

7    discoverable, so that the lead plaintiff may learn the names of other persons who might

8    assist in prosecuting the case.'" *Sandres v. Corr. Corp. of Am.*, No. 1:09-cv-01609

9    OWW JLT, 2011 U.S. Dist. LEXIS 14369, at *2 (E.D. Cal. Feb. 4, 2011).

10         Although Plaintiffs' requests may implicate potential privacy rights of the

11   putative class members, courts in the Ninth Circuit nevertheless routinely require the

12   production of such information subject to additional protective order protections and/or

13   an opt-out mechanism for class members overseen by a third-party administrator

14   identical to those countenanced by the court in *Belaire-West Landscape, Inc. v.*

15   *Superior Court*, 149 Cal. App. 4th 554 (2007). Plaintiffs have proposed these additional

16   protections to USAA, yet USAA still refuses to produce the putative class members'

17   contact information.

18         Moreover, USAA's boilerplate objections to these discovery requests are wholly

19   improper. And USAA's position, taken during the conferral, but not raised as an

20   objection in its responses to Plaintiffs' Interrogatory No. 8 or RFP No. 73, that

21   Plaintiffs must first make some unarticulated threshold showing that the contact

22   information they seek is relevant to issues pertaining to class certification before such

23   discovery is required, is contrary to the law in the Ninth Circuit.

24         Plaintiffs' need for the putative class members' contact information is

25   particularly warranted in this class action case against USAA.  Plaintiffs, on behalf of

26   themselves individually and on behalf of all others similarly situated, bring this action

27   against USAA to recover monetary damages, injunctive relief, declaratory relief, and

28   other remedies for breach of contract and violations of the California Business

1   Practices Act. (ECF 1, 64-10[1]). Plaintiffs' Class Action Complaint alleges in extensive
2   detail USAA's improper scheme designed to systematically, wrongfully, and arbitrarily
3   reduce or deny its insureds' first-party medical payments ("MedPay").  MedPay is an
4   insurance benefit under USAA insureds' auto insurance policies which provides for
5   reimbursement of medical bills resulting from a vehicle accident. (ECF 1).

6          USAA's scheme to reduce and deny MedPay benefits is multi-faceted.  In
7   furtherance of this scheme, USAA-Association contracts with Auto Injury Solutions
8   ("AIS"), a third-party, to reduce and deny reimbursement of MedPay benefits using its
9   Medical Bill Audit ("MBA") process.   USAA, through the AIS MBA process,
10  categorically reduces or denies the amount USAA pays for its insureds' MedPay claims
11  based upon various automated codes, including PPO, DOC, GR, PR, and RF codes.
12  (ECF 1, 64-10).

13         Plaintiffs   allege in their   Class Action Complaint detailed factual and class
14  allegations showing that class treatment is appropriate because, among other things,
15  (1) the putative class contains thousands of members, making individual joinder of all
16  injured parties impracticable, (2) the class members were injured by the same multi-
17  faceted scheme using the automated MBA process, such that common questions of fact
18  and law not only apply but predominate, (3) Plaintiffs' claims are typical of all class
19  members, (4) class adjudication is superior due to the amount of damages per-claimant
20  and the avoidance of duplicity of actions or inconsistent judgments, and (5) Plaintiffs
21  are adequate representatives of the class because they were subjected to USAA's
22  multifaceted scheme, and they experienced the same harm and have the same interests
23  as the other members of the class.  (ECF 1, 64-10).

24         At issue in this Motion, Interrogatory No. 8 requests USAA to "Identify" all
25  putative class members who meet certain criteria as to their California USAA MedPay

26

27  ────────────────────

28  [1] On December 1, 2023, Plaintiffs sought leave to amend their complaint to clarify the class definition,
    along with minor proofreading and clarifying edits. (ECF 64).

1   coverage and claims. (Dolley Decl., Ex. A). RFP No. 73 seeks documents related to

2   the same criteria as described in Interrogatory No. 8.[2]  (Dolley Decl., Ex. B). Plaintiffs

3   specifically defined, for purposes of these Discovery Requests, "Identify," to include

4   providing the full names, present or last known addresses, and present or last known e-

5   mail addresses for the putative class members. (Dolley Decl., Exs. A & B, § I.

6   DEFINITIONS, ¶ 15).

7        USAA responded to the Discovery Requests with a series of unsupported,

8   baseless objections. USAA's refusal to produce the putative class members' contact

9   information is improper. The putative class members' contact information is in

10  USAA's sole possession, custody and control and is readily retrievable. Plaintiffs

11  require the putative class members' contact information so that they can directly

12  contact these persons to obtain facts corroborating Plaintiffs' allegations regarding,

13  among other things, issues concerning typicality and commonality – both of which

14  USAA asserts, in its additional and affirmative defenses, are lacking.

15       Although the Discovery Requests may implicate potential privacy rights of the

16  putative class members, courts in the Ninth Circuit nevertheless routinely require the

17  production of such information where – as here – Plaintiffs have already agreed to

18  additional protective order protections[3] and/or an opt-out mechanism for class

19  members overseen by a third-party administrator identical to those established in

20  *Belaire-West*.

21       As shown herein, this Court should compel USAA to fully respond to Plaintiffs'

22  Discovery Requests and to produce the putative class members' contact information.

23

24

25

26  _____

27  [2] The information sought by the Discovery Requests is referred to herein as the "putative class members' contact information."

28  [3] The Parties previously agreed upon a standard Stipulated Protective Order which was entered by the Court covering the discovery process generally. (ECF 61, 67).

## B. Defendants' Introduction

Defendants oppose Plaintiffs' Motion to Compel highly personal, confidential information from nonparty insureds that is neither necessary nor relevant to their claims and that, in any event, Defendants are not permitted to provide under California law. Contrary to Plaintiffs' assertions, Defendants' objections to providing personal identifying information of their insureds were hardly "boilerplate." Defendants agreed to, and already have, provided Plaintiffs with extensive anonymized class data, but Defendants take seriously their statutory obligations to protect the confidential information of their insureds, which in any event is wholly irrelevant to Plaintiffs' claims. What Plaintiffs conveniently fail to mention—but is the driving force behind their request—is that they need this information so that they can find better Plaintiffs for their case because their current Plaintiffs do not even possess the claims that Plaintiffs' counsel wish to press, and therefore are neither adequate nor typical class representatives. Indeed, Plaintiffs' counsel have been avoiding for months Defendants' attempt to take their depositions, which would reveal these very points. (*See* ECF 68, Exhibit H to the Declaration of Paula M. Ketcham, at 3–5.) As Defendants explain below, this sort of "fishing" for better class representatives has been categorically prohibited by the Ninth Circuit.

With respect to relevance, Plaintiffs argue they are entitled to such information so their counsel can individually question nonparty, unsuspecting individuals regarding their confidential medical claims and credit history because Plaintiffs claim the information they seek is "generally discoverable" and courts "routinely require the production of such information." But Plaintiffs fail to explain *how* putative class members in *this* case possess any information that is remotely relevant to the allegations here—which exclusively concern Defendants' internal claims handling and medical bill audit methodologies. Plaintiffs do not show their "need" to contact individual putative class members about their medical and financial issues outweighs the serious third-party privacy concerns raised by Plaintiffs' proposed use of the information.

Plaintiffs claim that their need to contact putative class members is "particularly warranted in this class action case against USAA" without explaining why. The heart of Plaintiffs' class action, according to Plaintiffs themselves, is that Defendants use a computer-assisted medical bill audit system to "categorically reduce[] or den[y] the amount USAA pays for its insureds' MedPay claims based upon various automated codes, including PPO, DOC, GR, PR, and RF codes." However, if, as Plaintiffs have argued, Defendants apply "categorical" reductions and denials based on "automated codes" to the insurance claims of putative class members, then no questioning of putative class members is necessary. Indeed, this action is one of *four* nearly identical pending actions that Plaintiffs' counsel have brought against Defendants (one of which has been pending since April 2021), and Plaintiffs' counsel have never argued the need to contact putative class members. (Ketcham Decl. at ¶¶ 5–6.)

Moreover, Plaintiffs also fail to mention that they already have received from Defendants spreadsheets containing comprehensive anonymized claims data for the entire putative class. (*Id.* ¶¶ 7–8.) These spreadsheets contain anonymized claims data (more than 65,000,000 data points' worth) for every putative class member. The claims data detail the adjusting of every single line item on every medical bill submitted to Defendants for reimbursement during the putative class period, including all that involved any of the challenged "PPO," "DOC," "GR," "PR," and "RF" codes. These spreadsheets include 43 separate data fields, detailing, among other things, the claim number, patient ID, adjuster number, all relevant dates, procedure codes and descriptions, diagnosis codes, charges, reimbursements, reason codes and descriptions, and flags used by Defendants in connection with each claim. (*Id.*) Plaintiffs have not identified any way in which putative class members could supply any information about the adjustment of their claims that would assist the parties or the Court in its Rule 23 class determination.

Furthermore, Plaintiffs' attempt to access the personal information of putative class members violates the privacy rights of third-party insureds, and Defendants are

precluded under applicable California law from providing it to Plaintiffs.  Along with all Californians, the absent putative class members here enjoy an inalienable right to privacy under the California Constitution.  But nonparty insureds also enjoy heightened privacy protections from the California Insurance Information and Privacy Protection Act.  Case law from this District interpreting that statute makes clear that individuals' insurance information is specifically protected.  It is telling that Plaintiffs have not cited a single insurance class action case involving a request for the disclosure of personal identifying information of nonparty insureds.

As insurers, Defendants are statutorily prohibited from disclosing insureds' personal information absent affirmative written authorization from their insureds.  CAL. INS. CODE § 791.13(a) (prohibiting an insurance institution from disclosing "any personal or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure is . . . [w]ith the written authorization of the individual").

For the reasons set forth below in Defendants' Points and Authorities, the Court should deny Plaintiffs' request for this information.  The information Plaintiffs seek is not relevant, and even if it were, Plaintiffs' purported need for this information does not outweigh the absent putative class members' heightened and statutorily protected privacy rights.

However, if the Court determines otherwise—*i.e.*, that the personal information sought is relevant and necessary and that the relevance of the information outweighs third-party insureds' privacy rights, then the Court should follow the lead of other courts in this District as well as the California Supreme Court by ordering production of the information subject to the issuance of *Belaire-West* notices using an opt-in—rather than an opt-out—procedure to a sampling of the insureds.  *See Burdick v. Union Sec. Ins. Co.*, No. 07-CV-4028, 2008 WL 11337796, at *4 (C.D. Cal. Jan. 4, 2008); *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal. 3d 785, 792–94 (1982) (in bank).

### III.   PLAINTIFFS' WRITTEN DISCOVERY REQUESTS AT ISSUE

**INTERROGATORY NO. 8**: Identify all persons (1) who were insured under the MedPay coverage of a California automobile insurance policy issued by USAA; (2) who received medical, health care, or rehabilitation services, or medication or equipment, from a health care provider; (3) who made a claim under the MedPay coverage of that policy; (4) who submitted (or whose health care provider submitted) to USAA a bill for such services or products; and (5) who had that bill reduced or denied by a PPO code; or Physician Review (or "PR" code); or DOC code; or GR code; or RF code.

**ANSWER**: Defendants object that the scope of this Interrogatory, in several respects, is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportionate to the needs of the case under Federal Rule of Civil Procedure 26 in that the Interrogatory is not limited in geographic scope and requests private, personal, and/or confidential information of persons who are not parties to this case. Defendants object to the phrase "bill reduced or denied by a PPO code; or Physician Review (or 'PR' code); or DOC code; or GR code; or RF code" as vague, ambiguous, undefined, and nonsensical as based on false premises and a fundamental misunderstanding of Defendants' claims handling procedures.

Subject to and without waiving the foregoing objections, and subject to the entry of a protective or confidentiality order protecting Defendants' and third parties' confidential information, Defendants will produce claims data sufficient to show the MedPay claims of California insureds, without identifying personal data, who during the relevant period (*i.e.*, since February 19, 2019) had MedPay claims in which Defendants issued an Explanation of Reimbursement reflecting a PR, PPO, RF, DOC, or GR code for any billed line item. As noted above, Defendants previously provided a proposed Protective Order to Plaintiffs' counsel.

**REQUEST FOR PRODUCTION NO. 73**: Documents sufficient to show all persons (1) who were insured under the MedPay coverage of a California automobile insurance policy issued by USAA; (2) who received medical, health care, or rehabilitation services, or medication or equipment, from a health care provider; (3) who made a claim under the MedPay coverage of that policy; (4) who submitted (or whose health care provider submitted) to USAA a bill for such services or products; and (5) who had that bill reduced or denied by a PPO code; or Physician Review (or "PR" code); or DOC code; or GR code; or RF code.

**RESPONSE**: Defendants object that the scope of this Request, in several respects, is overly broad, unduly burdensome, and seeks information that is neither

relevant nor proportionate to the needs of the case under Federal Rule of Civil Procedure 26 in that the Request appears to seek copies of thousands of claim files or documents extracted from claim files and is not limited in geographic scope and requests private, personal, and/or confidential information of persons that have nothing to do with the issues in this case. Defendants further object to the extent that this Request seeks the identities of putative class members in order to add them as named Plaintiffs in this action. Defendants object to the phrase "bill reduced or denied by a PPO code; or Physician Review (or 'PR' code); or DOC code; or GR code; or RF code" as vague, ambiguous, undefined, and nonsensical as based on a false premise and a fundamental misunderstanding of Defendants' claims handling procedures.

Subject to and without waiving the foregoing objections, and subject to the entry of a protective or confidentiality order protecting Defendants' and third parties' confidential information, Defendants will produce claims data sufficient to show the MedPay claims of California insureds, without identifying personal data, who during the relevant period (*i.e.*, since February 19, 2019) had MedPay claims in which Defendants issued an Explanation of Reimbursement reflecting a PR, PPO, RF, DOC, or GR code for any billed line item. As noted above, Defendants previously provided a proposed Protective Order to Plaintiffs' counsel.

## IV.   PLAINTIFFS' POINTS AND AUTHORITIES

Plaintiffs brought this class action against USAA on behalf of themselves and a putative class of USAA insureds in the State of California. In their Discovery Requests, Plaintiffs seek the putative class members' contact information. USAA, however, improperly refuse to produce this information.

### ***Plaintiffs' Good Faith Efforts to Resolve the Dispute***

During the meet and confer on Tuesday, December 5, 2023, the Parties discussed the Discovery Requests and USAA's objections thereto. (Dolley Decl., ¶ 7). Plaintiffs' counsel indicated that this information is relevant and regularly produced in class actions pursuant to a protective order and/or a *Belaire-West* notice procedure. Plaintiffs further explained that they sought to communicate with the putative class members to confirm the allegations in their complaint, including allegations pertaining to commonality and typicality. (*Id.*). Moreover, during the conferral, Plaintiffs' counsel proposed that the Parties utilize the *Belaire-West* procedure and/or entry of any

appropriate protective order to properly alleviate any privacy concerns USAA had regarding producing the putative class members' contact information. (*Id.*, ¶ 8). USAA's counsel flatly rejected Plaintiffs' counsel's proposal, asserting that the production would burden their clients and violate their privacy interests. (*Id.*).

### **_USAA's Boilerplate Objections Are Improper_**

As shown in the above-quoted objections, USAA assert improper boilerplate objections to the Discovery Requests, asserting, *inter alia*, that the requests are overbroad, unduly burdensome, seek information neither relevant nor proportionate to the needs of the case, not limited in geographic scope and request private, personal, and/or confidential information of persons who are not parties to this case. Defendants also object on the basis that the phrases "bill reduced or denied by a PPO code; or Physician Review (or 'PR' code); or DOC code; or GR code; or RF code" are "vague, ambiguous, undefined, and nonsensical based on a false premise and a fundamental misunderstanding of Defendants' claims handling procedures." (Dolley Decl., Exs. C-D). Because courts disfavor such garden-variety objections and will not typically sustain such objections, this Court should similarly overrule Defendants' objections in this instance. *See, e.g.*, *Burlington N. & Santa Fe Ry. v. U.S. Dist. Dist.Ct.*, 408 F.3d 1142, 1147 (9th Cir. 2005) (holding that a boilerplate assertion does not satisfy the demands of Rule 26 and Rule 34).   As a threshold matter, USAA's boilerplate objections also fail in that "an objection must state whether any responsive materials are being withheld on the basis of that objection" Fed. R. Civ. P. 34(b)(2)(C). USAA has not stated whether it is withholding any responsive materials on the basis of its boilerplate objections.

- **Plaintiffs' request for the putative class members' contact information is relevant and proportionate to the needs of this case.**

USAA's bald, conclusory objection that Plaintiffs' request for the putative class members' contact information is neither relevant[4] nor proportionate to the needs of the case under Fed. R. Civ. P. 26 falls wide of the mark. As set forth in more detail below, the contact information is within USAA's possession, custody and control and can be readily produced from the database containing USAA's claims data. Moreover, contact information is proportionate to the needs of this class action case and, indeed, courts in the Ninth Circuit hold that "[t]he disclosure of names, addresses, and telephone numbers is a common practice in the class action context." *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011). "'Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case.'" *Sandres*, 2011 U.S. Dist. LEXIS 14369, at *2 (citation omitted); *Perez v. DirecTV Grp. Holdings*, No. SA CV 16-01440-JLS (DFMx), 2020 U.S. Dist. LEXIS 104460, at *4 (C.D. Cal. May 14, 2020) (noting the Ninth Circuit has favored allowing class contact discovery).

For production of a class list, "it is sufficient for Plaintiff to show that class contact information would aid in confirming Plaintiff's theories of liability and further developing evidence in support of class certification." *Sansone v. Charter Commc'ns, Inc.*, No. 17-cv-1880-WQH-JLB, 2019 U.S. Dist. LEXIS 19452, at *16-17 (S.D. Cal. Feb. 6, 2019); *see also Kaminske v. JP Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 U.S. Dist. LEXIS 141514, at *14 (C.D. Cal. May 21, 2010) (finding contact information of putative class members "relevant to aid in the identification and

---

[4] Information is deemed "relevant" and may, therefore, be discoverable if it "is relevant to any party's claim or defense … considering the importance of the issues at stake in the action … the parties' relative access to relevant information [and] the importance of the discovery to resolving the issues." Fed. R. Civ. P. 26(b)(1). "'[A]dmissibility at trial is not the standard for discovery disputes.'" *Perrin v. Cnty. of Riverside*, No. EDCV 08-595-LLP (SSx), 2010 U.S. Dist. LEXIS 153729, at *8 (C.D. Cal. Mar. 12, 2010) (quoting *Lamon v. Dir., Cal. Dep't of Corr.*, No. CIV S-06-0156 GEB KJM P, 2009 U.S. Dist. LEXIS 56329 at * 3 (E.D. Cal. 2009)).

1  collection of this potentially common evidence, as well as to test Plaintiff's theories
2  regarding the commonality of Defendant's practices" and "sufficient to establish that
3  the requested discovery is likely to produce persuasive information substantiating the
4  class action allegations"); *Edwards v. First Am. Corp.*, 385 F. App'x 629, 631 (9th Cir.
5  2010) ("Plaintiff must be given 'an opportunity to present evidence as to whether a
6  class action [is] maintainable,' and such an opportunity requires 'enough discovery to
7  obtain the material.'") (citation omitted; alteration in original); *Kress v. Price*
8  *Waterhouse Coopers*, No. CIV S-08-0965 LKK GGH, 2011 U.S. Dist. LEXIS 87845,
9  at *13 (E.D. Cal. Aug. 9, 2011) ("[T]he proposed discovery is necessary to confirm
10  questions of commonality and typicality, and finally whether this action may be
11  maintained as a class action."); *Jerozal v. Stryker Corp.*, No. 2:22-cv-04094-GW-
12  AFMx, 2023 U.S. Dist. LEXIS 186483 (C.D. Cal. July 11, 2023) (ordering production
13  of the putative class list noting its relevance to Rule 23 issues and the merits of the
14  case); *Wiegele v. Fedex Ground Package Sys.*, No. 06-CV-01330-JM(POR), 2007 U.S.
15  Dist. LEXIS 9444, at *2 n. 1 (S.D. Cal. Feb. 8, 2007) (affirming magistrate judge's
16  order compelling production of putative class member contact information).

17      Here, consistent with the holding in *Artis* and *Sandres*, Plaintiffs are entitled to
18  discovery of the putative class members' contact information. This is particularly so
19  considering the putative class members are percipient witnesses of USAA's MedPay
20  claims practices and, according to Defendants' own records, will have information
21  related to the denial or reduction of their requests for MedPay benefits through AIS's
22  MBA system. Contact with putative class members will allow Plaintiffs'
23  representatives to conduct a thorough investigation, gather evidence, confirm theories
24  of the case, verify and develop class claims and obtain class member declarations.

25      As stated above, the Class Action Complaint alleges in detail Defendants'
26  multifaceted scheme to reduce and deny MedPay claims using AIS's MBA system.
27  Dolley Decl., Ex. F. Thus, communicating with putative class members is relevant to
28  USAA's implementation of the multifaceted scheme and its impact on USAA insureds.

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL

1  For example, USAA reductions and denials of its insureds' MedPay claims through
2  RF, PPO and PR codes may result in balance billing by the relevant provider. Plaintiffs'
3  counsel seeks to uncover information from the putative class members regarding
4  whether they were subject to balance billing, and if so, whether they received collection
5  notices, adverse credit reporting, or paid out-of-pocket for the unpaid bills. Plaintiffs
6  also want to inquire whether the USAA adjuster advised these putative class members
7  that they had no authority to modify or change any denials or reductions based on PPO,
8  RF, or PR codes made in the MBA system, which would amount to improper delegation
9  of their adjuster function to AIS. These issues bear directly on Plaintiffs' allegations,
10 including class allegations, and Defendants' additional and affirmative defenses
11 contending that Plaintiffs cannot establish, among other things, typicality and
12 commonality under Rule 23.

13       Moreover, the fact that the putative class members' contact information is solely
14 within USAA's possession makes production of this information that much more
15 compelling. The putative class members' contact information will allow Plaintiffs to
16 obtain information as to the interactions between putative class members and
17 Defendants' own insurance adjusters and agents – which information is currently solely
18 within Defendants' knowledge and possession. It is a given that the parties should have
19 equal access to persons who potentially have an interest in or relevant knowledge of
20 the subject of the action. *See, e.g.*, *Son Gon Kang v. Credit Bureau Connection, Inc.*,
21 No. l:18-cv-01359-AWI-SKO, 2020 U.S. Dist. LEXIS 61229, at *5-6 (E.D. Cal. Apr.
22 7, 2020) (finding information about potential class members relevant for Rule
23 23 purposes and noting that "district courts in this Circuit have often found that '[a]s a
24 general rule ... all parties are entitled to equal access to persons who potentially have
25 an interest in or relevant knowledge of the subject of the action . . .' [and] [f]or that
26 reason, discovery of the putative class members' identities and contact information is
27 routinely allowed.").

28

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL

As shown above, the putative class members' contact information is relevant to issues pertaining to class certification and any argument by USAA otherwise falls wide of the mark and is contrary to well established law.[5]

- **Plaintiffs' requests are neither overly broad nor unduly burdensome.**

Plaintiffs' requests are neither overly broad nor unduly burdensome. Instead, Plaintiffs' requests are precise and narrow, and are carefully tailored to target specific information and documents. The Discovery Requests are specifically limited in scope to USAA's California insureds and are limited temporally to the class period. (Exs. A & B, § III. Relevant Time Period). And USAA fails to make any showing as to how it will be unduly burdened in responding to the Discovery Requests. *Shaw v. Experian Info. Sols., Inc*., 306 F.R.D. 293, 301 (S.D. Cal. 2015) (the burden is on the defendant to demonstrate that the discovery is unduly burdensome). In order to satisfy this burden, Defendants "'must provide sufficient detail regarding the time, money and procedures required to produce the requested documents.'" *Id*. (citation omitted). Notably, USAA's counsel acknowledged during the meet-and-confer session that the putative class members' contact information can be retrieved through a query of their database. (Dolley Decl., ¶ 9).

- **Plaintiffs' requests are neither vague nor ambiguous.**

USAA's objection to the phrase "bill reduced or denied by a PPO code; or Physician Review (or 'PR' code); or DOC code; or GR code; or RF code" as vague, ambiguous, undefined, and nonsensical" is not well-taken. *See* Dolley Decl., Ex. C at 4; Ex. D at 4. A request will be deemed sufficiently demanded when described with

---

[5] Additionally, any objection by Defendants that Plaintiffs must first make a threshold showing of a *prima facie* case for class relief under Rule 23 before they are obligated to produce the putative class members' contact information was waived by not specifically asserting this in their objections to the Discovery Requests. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.').

"reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A); *SEC v. Am. Beryllium & Oil Corp.*, 47 F.R.D. 66, 68 (S.D.N.Y. 1968). The test to determine "reasonable particularity" is whether a respondent of average intelligence would know what to produce. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008). Plaintiffs defined important words and phrases and stated the requests with clarity to make the information sought by Plaintiffs readily apparent to USAA.

Moreover, USAA's response to the Discovery Requests readily belies its vagueness objection. More specifically, USAA states in its response that it "will produce claims data sufficient to show the MedPay claims of California insureds, without identifying personal data, who during the relevant period (*i.e.*, since February 19, 2019) had MedPay claims in which Defendants issued an Explanation of Reimbursement reflecting a PR, PPO, RF, DOC, or GR code for any billed line item." (Dolley Decl., Ex. C at 4; Ex. D at 4). Defendants' willingness to provide claims data pertaining to these phrases show that they are neither vague nor ambiguous as USAA clearly knows what is at issue.

### *USAA's Confidentiality Objection Is Alleviated by the Entry of a Protective Order and/or a Belaire-West Notice and Opt-Out Process*

Lastly, Defendants' "private, personal, and/or confidential information" objections are without merit. Dolley Decl., Ex. C at 4; Ex. D at 4. As with any lawsuit, confidential information may be implicated in discovery. That fact, however, does not justify the blanket withholding of information. Courts in the Ninth Circuit and, more particularly, this District, consistently allow discovery of class list information while accounting for possible class members' privacy considerations. The *Belaire-West* notice procedure balances the putative plaintiffs' need for discovery with the privacy interests of the putative class members and requires a notice to the putative class members stating that counsel for the named plaintiffs seek to communicate with them regarding the class action case and that if they seek to prevent defendants from disclosing their contact information to plaintiffs' counsel and, thus, not be contacted,

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL

1    that they object in writing within a specified timeframe. *See Belaire-West*, 149 Cal.
2    App. 4th at 557-58.

3           Some courts in the Ninth Circuit have held that a protective order, in lieu of a
4    *Belaire-West* notice, sufficiently protects putative class members' privacy interests in
5    the confidentiality of their contact information. Other courts in the Ninth Circuit have
6    held that a *Belaire-West* notice, and a protective order, are required to sufficiently
7    protect class members' privacy interests. "[M]ost courts have concluded that *Belaire-*
8    *West* notices are required only when there are special privacy concerns, such as the
9    disclosure of medical or financial information." *Will Kaupelis v. Harbor Freight Tools*
10   *USA, Inc*., No. SACV 19-1203 JVS(DFMx), 2020 U.S. Dist. LEXIS 246379, at *2-3
11   (C.D. Cal. Sep. 28, 2020) (internal quotation marks omitted; citations omitted)); *Doe v.*
12   *Rady Childrens Hosp. San Diego*, No. 37-2021-00041405-CU-PO-CTL, 2023 Cal.
13   Super. LEXIS 66295, at *2-3 (Aug. 18, 2023) (finding the *Belaire-West* notice and opt-
14   in procedure appropriate where defendant raised third-party privacy issues, including
15   privacy rights and protections arising under the Health Insurance Portability and
16   Accountability Act, the Confidentiality of Medical Information Act, and the California
17   Constitution, as well as potential physician-patient privilege issues).

18          In *Barreras v. Michaels Stores, Inc.,* No. C 12-4474 (PJH), 2015 U.S. Dist.
19   LEXIS 54166 (N.D. Cal. Apr. 24, 2015), Michaels argued that the plaintiff's request
20   for class contact information should be denied because it will "'reveal confidential
21   medical information about . . . individuals — namely, that they requested statutory
22   leave of absence for personal reasons.'" *Id.* at *10 (citation omitted). The court found
23   this argument unpersuasive and noted that

24          [d]enying the requested discovery would essentially conclude Ms.
25          Barreras's class claims before she has had any real chance to pursue
             them. It would be a kind of merits determination through the side door.
26          Finally, the opt-out method that will be used here, discussed below, will
             allow individuals to refuse to have their contact information disclosed,
27          should any of them be particularly concerned about the revelation that
28          they requested a medical leave of absence.

1  *Id.* at *11.

2      This Court has previously found, even considering plaintiff deposition testimony

3  seemingly undercutting claims in the case, "plaintiffs have at least made a minimal

4  showing that there are class-wide issues that may permit class certification, and certainly

5  warrant allowing plaintiffs the opportunity to pursue reasonable class-wide discovery

6  that may substantiate their allegations and illuminate the class-wide issues." *Gallegos*

7  *v. Atria Mgmt. Co., LLC*, No. ED CV 16-888-JGB (SPx), 2017 U.S. Dist. LEXIS

8  238777, at *11 (C.D. Ca. Jan. 31, 2017). Moreover, this Court found that "the privacy

9  rights of the putative class member employees sufficient to require notice, and the

10  opportunity to opt-out, prior to disclosure of their payroll and any other employment

11  records. Whether such opt-out procedure is also required for class contact information

12  is a closer question." *Id.* at *17. Ultimately, this Court "determine[d] [that] putative

13  class members should be given notice and an opportunity to opt out before any of their

14  personally identifying information is disclosed." *Id.* at *18.

15      In lockstep with the decision in *Gallegos*, the Honorable Kenly Kiya Kato held,

16  while presiding as a Magistrate Judge, that both a *Belaire-West* notice and a protective

17  order sufficiently protected class members' privacy interests. *Bouissey v. Swift Transp.*

18  *Co.*, No. CV 19-3203-VAP (KKx), 2021 U.S. Dist. LEXIS 250653 (C.D. Cal. July 14,

19  2021). As Judge Kato explained, "[p]utative class members' right to privacy is a

20  recognized state privilege in a federal action based upon diversity jurisdiction." *Id.* at

21  *7 (citing *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007)). "These privacy

22  rights, however, must be balanced against the right of civil litigants to discovery under

23  the governing legal standards." *Id.* (citing *Pioneer Elecs. (USA), Inc. v. Superior Ct.*, 40

24  Cal. 4th 360, 371 (2007)). "In addition, [p]rotective measures, safeguards, and other

25  alternatives may minimize the privacy intrusion. For example, if intrusion is limited and

26  confidential information is carefully shielded from disclosure except to those who have

27  a legitimate need to know, privacy concerns are assuaged." *Id.* (internal quotation marks

28  omitted) (citing *Pioneer*, 40 Cal. 4th at 371; *Hill v. Na'l Collegiate Athletic Ass'n*, 7

17

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL

Cal. 4th 1, 38 (1994)).  Judge Kato also noted that "[g]enerally, federal courts in the Ninth Circuit have also held that a protective order, in lieu of a *Belaire* notice, sufficiently protects putative class members' privacy interests." *Id.* at 7-8 (citing *Romero v. Select Emp. Servs.*, No. CV 19-06369-AB (AGRx), 2020 U.S. Dist. LEXIS 79907 at *3 (C.D. Cal. Mar. 31, 2020); *Austin v. Foodliner, Inc.*, 2018 U.S. Dist. LEXIS 36685, at *5 (N.D. Cal. Mar. 6, 2018)). "The reason for this is twofold. First, disclosure of contact information alone involves no revelation of personal or business secrets, intimate activities … and threatens no undue intrusion to one's personal life." *Id.* at 8 (internal quotation marks omitted) (citing *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 U.S. Dist. LEXIS 58748 at *3 (N.D. Cal. July 31, 2008); *Pioneer*, 40 Cal. 4th at 373). "Second, the terms of a protective order may limit the use and distribution of the information of putative class members." *Id.* (citing *Artis*, 276 F.R.D. at 353). Judge Kato observed that "[w]hile some putative class members may not want to talk to Plaintiffs' counsel, any intrusion into their privacy will be minor and brief." *Id.* at *9 (citing *York v. Starbucks Corp.*, No. CV 08-7919-GAF(PJWx), 2009 U.S. Dist. LEXIS 92274, at *4 (C.D. Cal. June 30, 2009)). Judge Kato further found "the parties' stipulated protective order, which includes a provision that restricts the use of such contact information only for purposes of prosecuting, defending, or attempting to settle the action, sufficient to protect disclosure of putative class member contact information in federal litigation." *Id.*

Notably, Judge Kato held, in an earlier case, that the *Belaire-West* procedure was unnecessary, holding that the right to privacy is not absolute and that plaintiffs could contact putative class members pursuant to a protective order. *Hamilton v. Wal-Mart Stores, Inc.*, No. EDCV 17-1415-AB (KKx), 2018 U.S. Dist. LEXIS 205378, at *13 (C.D. Cal. Jan. 26, 2018).[6] In *Hamilton*, plaintiffs sought the names, address, email

---

[6] The Court required that the protective order provide that plaintiff's counsel inform each employee at the outset of the initial contact with that employee—whether in writing, by email, on the phone, or

1  address, and phone numbers of the putative class members. *Id.* at *11. Judge Kato held

2  that "[w]hile the Court does not discount the employees' right to privacy, this right is

3  not absolute. In this case, the putative class members' right to privacy must yield to

4  Plaintiff's efforts to pursue her claims (and, perhaps, ultimately, the other employees'

5  claims) against Defendants." *Id.* at *12.

6       Here, as Plaintiffs' counsel advised Defendants' counsel during conferral, a

7  protective order and/or a *Belaire-West* notice and opt-out process will alleviate any

8  privacy concerns USAA may have with respect to Plaintiffs' counsel contacting the

9  putative class members.

10  ### ***Conclusion***

11       For all the foregoing reasons, Plaintiffs respectfully request that this Court order

12  USAA to produce, pursuant to either a protective order and/or a *Belaire-West* notice

13  and opt-out process, putative class members' contact information. Plaintiffs further

14  request that Defendants' objections to Plaintiffs' Interrogatory No. 8 and Request for

15  Production No. 73 be overruled; Defendants be ordered to provide names and contact

16  information for all putative class members within fourteen (14) days from the date of

17  this Order; and Defendants be ordered to otherwise respond and provide supplemental

18  responses and production of documents on a class-wide basis in response to Plaintiffs'

19  Interrogatory No. 8 and Plaintiffs' Request for Production No. 73.

20

21

22

23

24

25

26

27  _____

28  in person—that, *inter alia*, the employee has a right not to communicate with counsel and that, if he
or she elects not to talk to counsel, counsel will terminate the contact and not contact them again. *Id.*

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL

## V.   DEFENDANTS' POINTS AND AUTHORITIES

Plaintiffs' request to compel should be denied for several reasons.  *First,* the information demanded is irrelevant, and putative class members are not percipient witnesses in possession of information relevant to Plaintiffs' claims.  *Second,* the information Plaintiffs seek consists of statutorily protected confidential medical and credit information of California insureds.  Even if putative class members possess some remotely relevant information, their privacy rights outweigh Plaintiffs' minimal interest in contacting them, particularly in light of the extensive anonymized data already produced to Plaintiffs.  *Third,* Plaintiffs' counsel seek the identities of other putative class members for an improper purpose: to attempt to find better plaintiffs than the ones they currently have.  The Ninth Circuit has held that this is not an appropriate reason to disclose the identities of nonparty putative class members to plaintiffs' counsel.  *Finally,* and in the alternative, under the California Insurance Information and Privacy Protection Act and applicable case law, if the personal identifying information sought by Plaintiffs is compelled, that information should be limited to those insureds who have affirmatively authorized its disclosure, *i.e.*, **opted in**.

### ***The Personal Identifying Information of Absent Putative Class Members Is Not Relevant to Plaintiffs' Claims.***

Contrary to their assertions, Plaintiffs have not requested the personal identifying information of Defendants' insureds in order to seek information relevant to their class claims, which allege that Defendants have improperly adjusted insurance claims based on "categorical" reductions and "automated codes."  Putative class members can hardly shed light on Plaintiffs' class claims concerning Defendants' internal methodologies.  Rather, having discovered that the two named Plaintiffs in this action are inadequate and atypical because their claims were not adjusted with all of the adjusting methodologies and codes at issue,[7] Plaintiffs have requested Defendants'

---

[7] *See* Ex. H to Ketcham Decl. (ECF 68), filed December 20, 2023.

1  insureds' personal identifying information in order to go on a fishing expedition for

2  suitable named plaintiffs—an improper use of discovery.  Cal. Rules of Prof'l Conduct,

3  Rule 7.3; *In re Williams-Sonoma*, 974 F.3d 535, 540 (9th Cir. 2020).

4      The personal contact information here is not relevant to the putative class claims.

5  Plaintiffs' theory of the case is that USAA uses computer-assisted medical bill review

6  as a supposed a "scheme" to categorically eliminate, abate, and/or reduce the amount

7  USAA pays for its insureds' health care expenses through automated computer

8  processes involving various preprogrammed codes, including PPO, DOC, PR, GR, and

9  RF codes.  Plaintiffs have not articulated any need for Defendants' insureds' personal

10 identifying information, and do not need to pry into highly confidential and sensitive

11 medical and financial information, to establish whether Defendants employed an

12 improper "scheme."  They have no such need.  In fact, Plaintiffs' counsel have been

13 litigating nearly identical actions against Defendants for years without seeking this

14 highly personal information.  (Ketcham Decl. at ¶¶ 5–6.)

15     Furthermore, Plaintiffs already have received in discovery detailed, anonymized

16 claims data (more than 65,000,000 data points) for every putative class member

17 detailing the adjusting of every line of every bill submitted to Defendants for

18 reimbursement, including those that involved any "PPO," "DOC," "PR," "GR," and

19 "RF" codes.  These spreadsheets include 43 separate data fields showing for each

20 claim, the claim number, patient ID, adjuster number, all relevant dates, procedure

21 codes and descriptions, diagnosis codes, charges, reimbursements, reason codes and

22 descriptions, and flags used by Defendants in connection with each claim.  (*See* Excerpt

23 of Produced Claims Data from USAA-HORLIECA-021268, Exhibit I to Ketcham

24 Decl.)  Moreover, Defendants also have produced their confidential internal policies

25 and communications as well as specific guidance for adjusters relating directly to the

26 MedPay claims at issue here.

27     Defendants' comprehensive claims data, internal policies and procedures, and

28 communications regarding the same are more than sufficient for the parties and Court

to evaluate the merits of the case and determine whether a class should be certified. Indeed, Plaintiffs' counsel is litigating nearly identical actions against Defendants in other state and federal courts and has not requested—let alone moved to compel—personal information from absent putative class members (or, in litigation pending in New Mexico, Defendants' nonparty insureds). (Ketcham Decl. at ¶¶ 5–6.) There is absolutely nothing about putative class members' personal, private information—which would not only subject those individuals to unsolicited phone calls but could also tie their names to sensitive medical *and* financial data—that would aid inquiries before the Court.

Aside from paying lip service to the Ninth Circuit's requirement that the discovery sought "is likely to produce substantiation of the class allegations," *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), Plaintiffs have failed to demonstrate *how* individual non-party putative class members could substantiate Plaintiffs' class allegations. *See, e.g.*, *Farr v. Acima Credit LLC*, No. 20-CV-8619, 2021 WL 2826709, at *3 (N.D. Cal. July 7, 2021) ("The Ninth Circuit has upheld district court decisions refusing to allow pre-certification discovery where plaintiffs failed . . . to establish that discovery was likely to produce substantiation of the class allegations.").

Plaintiffs first contend that they need to be able to "directly contact these persons to obtain facts corroborating Plaintiffs' allegations." They do not identify what kinds of facts they seek to obtain from these "percipient witnesses" or explain how individuals would be able to corroborate (or disprove) Plaintiffs' allegations concerning Defendants' "automated computer processes" and use of various computer codes. For that reason alone, their motion should be denied. *See, e.g.*, *McAdams v. Nationstar Mortg. LLC*, No. 20CV2202-L(BLM), 2022 WL 993546, at *4 (S.D. Cal. Apr. 1, 2022) ("While class member employees are likely to be percipient witnesses to each other's wage and hour claims in a FLSA case, the same cannot be said of the 1,281 individual homeowners and borrowers in this dual tracking [insurance] case.");

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL

1  *Johnson v. Sky Chefs, Inc.*, No. C11-05619 LHK (HRL), 2013 WL 11079297, at *3
2  (N.D. Cal. May 24, 2013) ("Here, to demonstrate their 'compelling' or 'legitimate'
3  need for the subject discovery, plaintiffs make the general assertion that the information
4  is relevant, that they have the right to conduct discovery on class certification issues,
5  and that the information they seek is authorized. Plaintiffs state that they are 'preparing
6  for class certification and must establish numerosity, commonality, typicality and
7  adequacy,' but they do not explain how the information they seek will help them to
8  establish any of these elements[, and] they never explain why the information is
9  necessary, or even helpful, in the first place. Plaintiffs state that they have a 'legitimate
10  need' for this information, but they fail to articulate this need. Plaintiff's vague and
11  unsupported assertion does not outweigh the privacy rights of potential class
12  members.")

13       Plaintiffs next suggest that the absent putative class members "will have
14  information related to the denial or reduction of their requests for MedPay benefits
15  through AIS's MBA system."  However, the anonymized claims data already produced
16  to Plaintiffs contains all of the information regarding the adjustment of claims that
17  putative class members have received.  Plaintiffs already have more information related
18  to the processing of requests for California MedPay benefits through the MBA process
19  than any putative class member would ever be able to provide.

20       Courts in this District and throughout the Ninth Circuit deny pre-certification
21  requests just like Plaintiffs' where putative class members' privacy rights would be
22  invaded without aiding the class certification inquiry—especially in insurance class
23  actions such as this one.  *See, e.g.*, *Small v. Allianz Life Ins. Co. of N. Am.*, No.
24  220CV01944TJHKES, 2022 WL 3013097, at *1 (C.D. Cal. July 13, 2022) (denying
25  motion to compel personal contact information of putative class members where
26  plaintiff failed to satisfy her burden of demonstrating a need for the information);
27  *Moreland v. Prudential Ins. Co. of Am.*, No. 20-CV-04336-RS (SK), Dkt. No. 52 at 1
28  (N.D. Cal. July 13, 2022) (denying motion to compel where "[d]efendant ha[d] already

1   provided anonymized data about policyholders in the form of a 2,944-page spreadsheet

2   showing the policy number, type, date, past premium paid, lapse date, and status of the

3   insured" and holding that "[u]nder these circumstances, before class certification,

4   discovery about the names and contact information about the putative class members

5   is not appropriate").  *See also Palmer v. Stassinos*, No. 5:04CV3026 RMW(RS), 2005

6   WL 3868003, at *4 (N.D. Cal. May 18, 2005) (denying motion to compel disclosure

7   of class contact information because the plaintiff already had been provided

8   information that would inform the Rule 23 factors of numerosity and typicality);

9   *Mandrigues v. World Savings, Inc.*, No. C 07-4497 JF (RS), 2008 WL 11388759 (N.D.

10  Cal. June 20, 2008) (denying motion to compel disclosure of class contact information

11  before certification because, as in *Palmer*, "it [did] not appear that the identities of class

12  members [were] required to enable plaintiffs to file a motion for class certification.").

13       Next, "Plaintiffs' counsel seeks to uncover information from the putative class

14  members regarding whether they were subject to balance billing, and if so, whether

15  they received collection notices, adverse credit reporting, or paid out-of-pocket for the

16  unpaid bills."  In other words, Plaintiffs admit they want to contact the putative class

17  members in order to inquire about their personal credit history.  *Martin v. Khaylie Hazel*

18  *Yearning LLC*, No. 3:22-CV-176-SA-JMV, 2022 WL 17573424, at *3 (N.D. Miss.

19  Dec. 9, 2022) ("[U]nless and until a class has been certified, discovery as to the

20  damages such class might be entitled to is premature.").  Yet Plaintiffs have objected

21  to every one of Defendants' discovery requests related to balance billing as "barred

22  under the collateral source rule."  (*See, e.g.*, Plaintiff Horlieca's Responses and

23  Objections to Defendants' First Set of Interrogatories to Plaintiff John Horlieca,

24  Exhibit J to Ketcham Decl., at 4–7, 11; Plaintiff Horlieca's Responses and Objections

25  to Defendants' First Set of Requests for Production to Plaintiff John Horlieca, Exhibit

26  K to Ketcham Decl., at 3–6, 17–18.)  It would be both unjust and ironic if *the named*

27  *Plaintiffs* were allowed to refuse to provide about themselves the very discovery that

28

they seek to obtain from absent putative class members (who, unlike themselves, have not put their confidential personal information at issue in this lawsuit).

Last, Plaintiffs purport to need from Defendants' insureds descriptions of their personal interactions with Defendants' adjusters so that they may "inquire whether the USAA adjuster advised these putative class members that they had no authority to modify or change any denials or reductions." However, nowhere in the Class Action Complaint have Plaintiffs alleged that Defendants' adjusters lack authority to adjust claims. Furthermore, Plaintiffs can ask Defendants' adjusters about their authority to adjust claims without invading the privacy of Defendants' insureds.

### ***Plaintiffs Seek to Unnecessarily Invade the Absent Putative Class Members' Privacy Rights, Which Outweigh the Scant-to-Zero Relevance of the Information Sought.***

Plaintiffs' counsel's desire to call and question USAA members and insureds regarding not only their private medical claims history but also their personal financial and credit history raises significant privacy concerns that outweigh the negligible relevance of Plaintiffs' requested discovery. As Plaintiffs concede, "[p]utative class members' right to privacy is a recognized state privilege in a federal action based upon diversity jurisdiction." *Bouissey v. Swift Transp. Co.*, No. CV 19-3203-VAP (KKx), 2021 U.S. Dist. LEXIS 250653 (C.D. Cal. July 14, 2021) (citing *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007)). The California Constitution and California Insurance Information and Privacy Protection Act both protect the privacy rights of non-parties, including absent class members. *See* CAL. CONST. ART. I, § 1 (declaring privacy to be an inalienable right); CAL. INS. CODE § 791.13 (prohibiting an insurance institution from disclosing "any personal or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure is . . . [w]ith the written authorization of the individual").

Nonparties' rights to privacy should not be sacrificed, particularly where Plaintiffs have ample discovery and other less-intrusive means of seeking the same

25

information.  *See Burdick v. Union Sec. Ins. Co.*, No. 07-CV-4028, 2008 WL 11337796, at *4 (C.D. Cal. Jan. 4, 2008); *Dobro v. Allstate Ins. Co.*, No. 16-CV-01197, 2016 WL 4595149, at *8 (S.D. Cal. Sept. 2, 2016); *Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal. 3d 785, 792–94 (1982).

Plaintiffs have relied entirely on non-insurance class actions, especially wage-and-hour class actions.  Courts have pointed out that employees in wage-and-hour cases would not expect their personal information to be withheld from a plaintiff seeking to prove labor law violations against them and to recover for those violation and, similarly, that complaining customers in a defective product class action have no reasonable expectation that their information would be withheld from plaintiffs considering they already disclosed their information to defendant to obtain some relief. In contrast, the putative class of insureds here have an objectively reasonable expectation of privacy in the medical claims submitted for reimbursement under their MedPay coverages.  *See, e.g.*, *Shirley v. Allstate Ins. Co.*, No. 18CV994 AJB (BGS), 2019 WL 3208000, at *4 (S.D. Cal. July 16, 2019) (highlighting the distinction between case types and denying plaintiffs' motion to compel insureds' information).

As the California Supreme Court has explained, Californians' privacy privilege[8] may only be intruded upon where the needs of the litigation outweigh the sensitivity of the information/records sought.  *See Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 371–75 (2007).  Here, Plaintiffs' counsel admit that they seek to call and question unsuspecting nonparty individuals about their sensitive medical claims and financial information, including creditworthiness and debts.  Medical and financial information are the two categories most deserving special protections, *see id.* at 372, and both are directly implicated by Plaintiffs' request.

---

[8] Defendants specifically objected to the production of "private, personal, or confidential information of nonparties or putative class members," especially where "the subject of a privilege."  (Dolley Decl. Ex. C at 2; Dolley Decl. Ex. D at 3.)

1      ***If the Information Sought Is to Be Produced, the Proper Procedure Is to Have***
2      ***Insureds Provide Authorization (i.e., Opt in) Before Disclosure.***

3           Should the Court disagree with Defendants and determine that Defendants'
4      insureds' information is relevant, necessary, and outweighs their privacy interests, then
5      the proper method for protecting their privacy from unauthorized disclosure would be
6      to use *Belaire-West* notices with an opt-in, rather than an opt-out, procedure to a small
7      sample of the insureds, because the information sought raises valid third-party privacy
8      issues and the California Insurance Information and Privacy Protection Act prohibits
9      disclosure of such information without affirmative written authorization.

10          The case law cited by Plaintiffs supports the use of the opt-in method of notice
11     even outside of the insurance context when, as here, the information sought "raises
12     valid third-party privacy issues." *Doe v. Rady Childrens Hosp. San Diego*, No. 37-
13     2021-00041405-CU-PO-CTL, 2023 Cal. Super. LEXIS 66295, at *2-3 (Aug. 18, 2023)
14     (requiring use of the *Belaire-West* notice with opt-in procedure). This is because such
15     disclosure—especially disclosure to enable unsolicited phone calls from Plaintiffs'
16     counsel—carries a tremendous potential for violation of individuals' privacy. And
17     Plaintiffs offer no evidence that they, or their counsel, have appropriate data privacy
18     and security measures in place to protect insureds' sensitive information.

19          Furthermore, where the information sought is that of third-party insureds, both
20     the California Supreme Court and this District have endorsed an opt-in approach in
21     light of the California Insurance Code prohibition on disclosing individual insureds'
22     information[9] absent affirmative written authorization. CAL. INS. CODE § 791.13(a);
23     *Burdick*, 2008 WL 11337796, at *4 (holding that the court may "order disclosure of
24     the requested contact information for putative class members who, after being given
25     notice, affirmatively authorize defendant to provide such information to plaintiff, i.e.,
26
27     _____

28     [9] "Personal information" is defined to "include[] an individual's name and address." CAL. INS. CODE
       § 791.02.

those who opt in"); *Colonial Life*, 31 Cal. 3d at 794 (approving opt-in procedure whereby insureds' information would be disclosed only "if the authorization form, included in the letter sent to claimants, is returned within a year").[10]  There is no reason to depart from these cases here.

In *Burdick*, the plaintiff brought a class action alleging that the defendant insurer wrongfully denied her insurance claim through use of an improper coverage limitation. *Burdick*, 2008 WL 11337796, at *1.  The plaintiff sought to compel production of "the names, addresses and telephone numbers of California residents" who were putative class members and who did not opt out after being provided with notice.  *Id.* at *2. After evaluating the differing privacy interests between insureds and consumers and recognizing the statutory protection for insureds' information under both the California Constitution and the California Insurance Code, the *Burdick* court held that it was tentatively inclined to order production of the information but only for those insureds who opted in—*i.e.*, provided "affirmative written authorization."  *Id.* at *4.  This would properly protect the privacy of the absent putative class members here.

Further, Plaintiffs' counsel plainly would have no need (and probably no ability) to speak to more than a handful of Defendants' insureds; accordingly, any *Belaire-West* notice that might be ordered by the Court should be directed to a reasonably limited (*i.e.*, small) subset of the tens of thousands of putative class members in the case.

If the Court finds that the insureds' personal information is relevant, necessary, and outweighs their privacy interests, it should follow *Colonial Life* and *Burdick*, and order production of the information from only those insureds who opt in after receipt of *Belaire-West* notices.

---

[10] At least one court has also limited the content of any communications with insureds concerning their claims.  *Mead Reinsurance Co. v. Superior Ct.*, 188 Cal. App. 3d 313, 322, 232 Cal. Rptr. 752, 757 (Ct. App. 1986) ("Because the disclosure of merely the name and address of a person who has made a claim in some sort of casualty context could lead to abuses, it would be appropriate, in our view, for the order in this section 719.13 circumstance expressly to limit the nature and extent of the contact with a claimant exclusively to the court-approved letter noted.")

1

## *Conclusion*

2   Defendants respectfully request that the Court deny Plaintiffs' motion to compel

3   production of the absent putative class members' personal information because it is

4   neither necessary nor relevant given the extensive anonymized data already produced

5   to Plaintiffs and because Plaintiffs' purported reasons for needing the information are

6   not only invalid, but they do not outweigh third-party insureds' privacy rights.  To the

7   extent that the Court determines that the information should be produced, and in order

8   to protect insureds' privacy interests and minimize the burden and expense of notice,

9   Defendants respectfully request that the Court order production subject to the issuance

10  of *Belaire-West* notices using an opt-in procedure to a small subset of Defendants'

11  California insureds.

12

13  DATED: December 20, 2023              **FRANKLIN  D.  AZAR  &  ASSOCIATES,
14                                        P.C.**

15                                        */s/ Kevin J. Dolley*
16                                        KEVIN J. DOLLEY (*pro hac vice*)
17                                        *Attorneys for Plaintiffs and the Proposed Class*

18  DATED: December 20, 2023              **ARENTFOX SCHIFF LLP**

19                                        */s/ Paula M. Ketcham*
20                                        PAULA M. KETCHAM

21                                        *Attorneys for Defendants*

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Stephanie Chateauneuf, certify that on December 20, 2023 the foregoing was filed electronically in the Court's Electronic Filing System ("ECF"); thereby upon completion, the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered email addresses to parties of record in the case, in particular on the following:

JOHN S. PURCELL
john.purcell@afslaw.com
DOUGLAS E. HEWLETT JR.
douglas.hewlett@afslaw.com
ARENTFOX SCHIFF LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401

PAULA M. KETCHAM
paula.ketcham@afslaw.com
JAY WILLIAMS
jay.williams@afslaw.com
JAMES D. CROMLEY
james.cromley@afslaw.com
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Telephone: 312.258.5500
Facsimile: 312.258.5600

*Attorneys for Defendant*

By:   */s/ Stephanie Chateauneuf*
       Stephanie Chateauneuf
       Paralegal

NOTICE OF MOTION AND JOINT STIPULATION AS TO PLAINTIFFS' FIRST MOTION TO COMPEL